JAMES L. CAREY *et al.*, Plaintiffs-Appellants, v. NEAL, CORTINA AND ASSOCIATES, f/n/a Neal and Cortina, *et al.*, Defendants (H. Wayne Neal *et al.*, Defendants-Appellees).

First District (4th Division)   No. 1—90—0439

Opinion filed June 20, 1991.

52

JIGANTI, P.J., dissenting.

Thomas C. Baratta, Jr., & Associates, of Melrose Park (Thomas C. Baratta, Jr., of counsel), for appellants.

H. Wayne Neal and Rosemary Neal, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford, Thomas P. McGarry, and Edward J. Rolwes, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiffs, James L. Carey, Thomas Ronchetti, and Roncasm, Inc., appeal from the dismissal of counts IV and V of their complaint for damages arising out of the alleged fraud of various defendants. In the first three counts of their lawsuit, plaintiffs charge their former attorneys, Neal Cortina & Associates, a law partnership, and David W. Neal and Frank J. Cortina, Jr., individually (the lawyer defendants), with engaging in a fraudulent scheme to sell certain Florida real estate to plaintiffs on behalf of the owners, H. Wayne Neal and Rosemary Neal (the Neals). In addition to the fraud claim, plaintiffs charge their former attorneys with breach of fiduciary duty and willful and wanton conduct. Those counts, which are not before us on this appeal, name as defendants the law partnership of Neal, Cortina & Associates and the individual named partners.

This appeal involves the two counts of the complaint that are directed against the Neals, who were the sellers of the Florida property. According to counts IV and V of the complaint, the Neals as well as the lawyer defendants made fraudulent representations to plaintiffs to induce their purchase of the Florida property. Plaintiffs further charge that the Neals continuously dissuaded them from obtaining conventional financing in favor of arranging their own financing. Under this arrangement, the Neals acted as mortgagees and took a mortgage note from plaintiffs.

During the pendency of this lawsuit in Illinois, a court in Florida entered a judgment of foreclosure on the Neals' mortgage lien and ordered the sale of the Florida real estate. Plaintiffs did not contest the mortgage foreclosure, nor did they raise their fraud claims in that forum.

Pursuant to section 2—619(a)(4) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(a)(4)), the Neals moved the circuit court to dismiss counts IV and V of plaintiffs' complaint, reasoning that the Florida judgment of foreclosure and sale of the real estate operated as a bar, under the doctrine of *res judicata,* to the plain-

tiffs' ability to maintain their fraud action against the Neals. The trial court agreed and dismissed them from the lawsuit.

On appeal, plaintiffs argue that the trial court's ruling is erroneous. We reverse and remand.

BACKGROUND

The complaint alleges that plaintiffs' attorneys were David Neal and Frank Cortina, partners in a law practice. The individual plaintiffs, James Carey and Thomas J. Ronchetti, formed Roncasm, Inc., at the recommendation of their attorneys, for the purpose of buying and holding income-producing property called Patio Palms, located in Pinellas County, Florida. David Neal's father and mother owned the property, which was improved with rental units.

According to the complaint, all defendants represented to the plaintiffs that the property was worth $550,000 and that the rental income generated by the property was sufficient to meet the debt service on it. In reliance on these representations, and in reliance on their fiduciary relationship with the lawyer defendants, plaintiffs entered into a contract to purchase Patio Palms from the Neals for $550,000. The property was then conveyed to Roncasm and the individual plaintiffs guaranteed a promissory note in the amount of $525,000, payable to the Neals and secured by a "wraparound mortgage" in favor of the Neals. Plaintiffs also paid the Neals $25,000 as the balance of the purchase price.

The complaint further alleges that the defendants continually dissuaded plaintiffs from seeking conventional financing and did not disclose until months after the transaction that the property was encumbered by a mortgage that contained a "due-on-sale" clause. According to plaintiffs, the existence of the due-on-sale clause put their interest in the property "in jeopardy."

The plaintiffs allege that the property was not in fact worth $550,000 but only $300,000 and the rental income was insufficient to meet the debt service obligations on the property. As a result, plaintiffs claim, they were forced to pay the difference out of their own funds and lost considerable sums of money and the property itself. Plaintiffs assert that the Neals actively participated in the transaction between January and April 1985 and that they made numerous representations as to the value of the property and its income-producing capabilities.

In June 1987 the Neals filed a foreclosure action on their mortgage in Florida. In November 1987 plaintiffs filed the instant lawsuit against all defendants, including the Neals, asking for damages. On March 10, 1988, the Florida court entered a final judgment of foreclosure. On March 24, 1988, the lawyer defendants filed a motion pursuant to sec-

tion 2—615 of the Illinois Code of Civil Procedure, requesting that the court dismiss the complaint for failure to state a cause of action. On May 9, 1988, the Neals filed their own motion, for an extension of time in which to answer or otherwise plead to the complaint. In July, the trial court struck the complaint with leave to amend, and in August, plaintiffs filed an amended complaint. In November 1988, all defendants filed a motion to strike and dismiss the amended pleading.

On January 2, 1989, the trial court denied the lawyer defendants' motion to dismiss but granted the Neals' motion. Plaintiffs were allowed to replead the counts directed against the Neals. On March 27, 1989, the Neals filed a motion to dismiss pursuant to section 2—619(a)(4), raising the affirmative defense of *res judicata.* The court denied the motion without prejudice and in September 1989 the Neals filed an "amended" motion to dismiss counts IV and V.

In January 1990 the trial court granted the Neals' motion and dismissed counts IV and V, with prejudice. The court further found that there was no just reason to delay enforcement or appeal of the order under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

OPINION

The sole issue on appeal is whether principles of *res judicata* bar plaintiffs from suing the Neals in tort because the plaintiffs failed to assert this claim in the Florida foreclosure action, either by defense or counterclaim.

■■■ "[A] final judgment on the merits rendered by a court of competent jurisdiction constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." (*Page v. Illinois Central Gulf R.R.* (1987), 162 Ill. App. 3d 744, 746, 516 N.E.2d 431, 433, *appeal denied* (1988), 119 Ill. 2d 560, 522 N.E.2d 1247.) The doctrine extends to all matters that were litigated or could have been litigated (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959), but that *"dimension of res judicata that bars matters which might have been litigated applies only where the first and second suit [involve] the same cause of action."* (Emphasis added.) (*Pfeiffer v. William Wrigley Jr. Co.* (1985), 139 Ill. App. 3d 320, 322, 484 N.E.2d 1187, 1189.) As the court in *Pfeiffer* explained, when analyzing the identity of causes of action for *res judicata* purposes, the second suit is not barred if the proof of its elements differs from the proof required to prove the prior action. (See *In re Marriage of Firestone* (1987), 158 Ill. App. 3d 887, 511 N.E.2d 895 (Earlier dismissal by Ohio court of husband's counterclaim based on oral settlement agreement did not bar his action in Illinois to enforce written settlement contract; the causes of action were

different).) The main purpose of *res judicata* is to avoid duplicative litigation between the same parties over the same matters; judicial economy is served if a party is required to bring all of his or her claims arising out of the same facts at one time. See also *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.* (1989), 189 Ill. App. 3d 638, 545 N.E.2d 481.

Our analysis of *res judicata* only begins with the recognition that the Illinois plaintiffs in the pending case "could have" asserted a fraud defense to the Florida mortgage foreclosure proceedings or "could have" filed a counterclaim based on the Neals' alleged fraud. The ultimate question is whether they were compelled by law to do so, upon pain of forfeiting their tort claim altogether.

In our opinion, the pending case is not a proper one in which to apply *res judicata*. Plaintiffs in the pending case were the defendants in the Florida foreclosure action and did not contest the foreclosure or assert any rights to the real estate itself. They did not counterclaim for tort damages in that forum, choosing instead to bring the fraud action in Illinois, joined with the claims against the lawyer defendants. If they were not barred as a matter of law from making that election, we cannot justify dismissal of their cause of action on the ground that they failed to raise their claim in the foreclosure proceedings.

In the absence of a statute or rule of court that *requires* defendants to assert their claims as a counterclaim to the plaintiff's lawsuit, the general rule is that the defendant retains the choice of bringing a separate action against the plaintiff instead of filing a counterclaim. (See Restatement (Second) of Judgments §22, Comment *a*, at 185-86 (1982).) Although there is an exception to this general principle, the point is that the defendant generally should not be forced to assert his claims in the plaintiff's forum or proceeding but should be free to bring a separate action.

■ For its value as a conceptual framework for our analysis, we turn to section 22 of the Restatement (Second) of Judgments (1982). This section summarizes the principles that govern when and under what circumstances a defendant in the initial lawsuit is allowed to bring a separate claim instead of filing a counterclaim:

"§22. Effect of Failure to Interpose Counterclaim

(1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).

(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of

judgment in that action, from maintaining an action on the claim if:

(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or

(b) *The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.*" (Emphasis added.) Restatement (Second) of Judgments §22, at 185-86 (1982).

Comment *b* to section 22 points out that the defendant's claim against the plaintiff is not normally merged in the judgment and "issue preclusion does not apply to issues not actually litigated. *** The defendant, in short, is entitled to his day in court on his own claim." Restatement (Second) of Judgments §22, Comment *b*, at 186 (1982).

In the interests of allowing a party his "day in court," then, the general rule assumes that the defendant in one lawsuit is not barred from suing the plaintiff in another, as long as the claim in issue is not one that must have been joined in the first suit as a counterclaim, either by statute, rule of court, or by those considerations that are expressed in subsection 22(2)(b).

A. COMPULSORY COUNTERCLAIM STATUTE OR RULE OF COURT
(SECTION 22(2)(a))

■ With respect to the first exception to the general rule of section 22(1), Restatement (Second) of Judgments, we find no indication that Florida's legislative enactments or rules of court *require* the filing of counterclaims. In fact, one of the Florida Rules of Civil Procedure, Rule 1.270(b), allows the trial court wide discretion in ordering severance of claims or separate trials. Significantly, at the time of the Neals' mortgage foreclosure action, another provision of Florida law actually discouraged the filing of counterclaims in foreclosure actions by mandating that all such claims would be severed for separate trial. (See Fla. Stat. §702.01 (1987) (which states in pertinent part, "In a mortgage foreclosure action, the court *shall* sever for separate trial all counterclaims against the foreclosing mortgagee. The foreclosure claim shall, if tried, be tried to the Court without a jury"). (Emphasis added).) Such a provision implies that the Florida legislature intended to expedite mortgage lien foreclosures by allowing summary adjudication of the liens and leaving all other counterclaims to separate determination.

In *Kirian v. Haven Federal Savings & Loan Association* (Fla. App. 1990), 560 So. 2d 380, affirmed in *Haven Federal Savings & Loan Association v. Kirian* (Fla. 1991), 579 So. 2d 730, however, the appellate

court held that a mandatory construction of section 702.01 violated separation of powers principles. The court reasoned that because the Florida Constitution vested power in the State supreme court to adopt rules of practice and procedure, and because Rule 1.270(b) granted trial courts discretion in severing claims, the legislature could not abrogate that power by *requiring* the severance of all counterclaims in mortgage foreclosure proceedings. The reviewing courts in *Kirian* accordingly held that the trial court erred in striking the defendant's fraud-based affirmative defenses and counterclaims in a mortgage foreclosure proceeding.

*Kirian* illustrates a significant procedural conflict that existed in Florida law regarding the severance of counterclaims in mortgage foreclosure cases. At the time of the Neals' foreclosure action, section 702.01 by its terms required the severance of all counterclaims in such actions. That being the case, it is not unreasonable to expect that a defendant with a counterclaim would believe it necessary, as well as desirable, to file his claim in a separate action. In any event, the defendants in the mortgage foreclosure action in Florida were not required by statute or rule of the Florida Supreme Court to assert their counterclaims in the Neals' lawsuit.

### B. COMMON LAW RULE OF COMPULSORY COUNTERCLAIM (*RES JUDICATA* PRINCIPLES) (SECTION 22(2)(b))

■ Absent a mandatory counterclaim statute or rule enacted by the State supreme court, a defendant is free to file a separate action *unless* his claim falls within the scope of subsection 22(2)(b) of the Restatement. This subsection focuses on the interrelationship of the two causes of action. If the second suit would result in the *nullification* of the first judgment, *res judicata* bars the second suit in what may be viewed as a "common law" rule of compulsory counterclaim.

Comment *f* to section 22(2)(b) sheds some light on the application of this concept. The central question is whether "allowance of a subsequent action would so plainly operate to undermine the initial judgment that the principle of finality requires preclusion of such an action. *** For such an occasion to arise, *it is not sufficient that the counterclaim grow out of the same transaction or occurrence as the plaintiff's claim, nor is it sufficient that the facts constituting a defense also form the basis of the counterclaim.* The counterclaim must be such that its successful prosecution in a subsequent action would nullify the judgment, for example, by allowing the defendant to enjoin enforcement of the judgment, or to recover on a restitution theory the amount paid pursuant to the judgment, *** or by depriving the plaintiff in the first action of

property rights vested in him under the first judgment." (Emphasis added.) Restatement (Second) of Judgments, Comment *f*, at 189-90 (1982).

Comment *b* to section 22 notes that if (as here) the facts constituting a defense are also grounds for a counterclaim, *the defendant is not precluded from bringing a separate suit against the plaintiff by his failure to assert the defense in plaintiff's action*. However, the failure to interpose a defense does preclude the defendant from thereafter asserting that defense as a basis for *attacking* the judgment. Hence, in the pending case, the failure to assert fraud as a defense to the mortgage foreclosure would bar plaintiffs from now seeking relief from the mortgage foreclosure judgment, including liability on the note. In other words, they cannot have the Illinois court collaterally attack the Florida judgment by rescinding the note. Nor could they maintain a claim to the Florida real estate itself. On the other hand, the elements and proof of fraudulent misrepresentation and the elements and proof of the mortgage documents and promissory note are clearly distinct. Accordingly, we believe that plaintiffs should not be barred from seeking whatever tort damages they can prove. Because of the Neals' existing judgment on the note, however, the Neals presumably would be entitled to a setoff in the event the plaintiffs are awarded damages on their tort claim in this case.

We conclude that the rationale of section 22 of the Restatement inveighs against the application of *res judicata* to bar plaintiffs' claim.[1] Plaintiffs are not contesting the foreclosure of the mortgage lien or their liability on the note and have not asserted any rights to

---

[1]The Neals cite Florida cases for the proposition that fraud may be raised as an affirmative defense to foreclosure proceedings. (See, *e.g., Neeld v. Sperry* (Fla. 1931), 101 Fla. 521, 134 So. 500.) That a claim may be raised as a defense to one action, however, does not mean that failure to raise it is always fatal to a subsequent action between the parties. See *Bratcher v. Wronkowski* (Fla. App. 1982), 417 So. 2d 1132, *appeal denied* (1982), 424 So. 2d 760 (Home buyer who defaulted on mortgage was not precluded from maintaining an action for breach of contract regarding defective fixtures sold as part of contract price; such claim was not compulsory counterclaim in mortgage foreclosure action because the issues were different and the plaintiff was not asserting the contract claim as a defense for her failure to make the mortgage payments); *cf. Wise v. Tucker* (Fla. App. 1981), 399 So. 2d 500 (Defendant in foreclosure action, who obtained agreement for extension of time to pay arrearages on loan, was barred by *res judicata* from maintaining suit for breach of the extension agreement under these facts: he failed to inform foreclosure court of his extension agreement with plaintiff; he lost his subsequent motion to set aside the foreclosure sale based on fraud; he did not appeal from that holding; and he then filed a contract claim alleging that the foreclosure plaintiff had breached the extension agreement).

the property itself. That was the sole subject of the Florida action. In contrast, the pending action is premised on the tort of fraudulent misrepresentation. See *Suttles v. Vogel* (1987), 160 Ill. App. 3d 464, 480-81, 513 N.E.2d 563, 575, *rev'd on other grounds* (1988), 126 Ill. 2d 186, 533 N.E.2d 901 (*res judicata* would not bar plaintiff's equitable action to recover monies paid to vendor of land under unjust enrichment theory despite fact plaintiff failed to assert such matter as counterclaim in earlier forcible entry and detainer action, because forcible statute only allows counterclaims if they are "germane to the distinctive purpose" of the action); cf. *Steel City National Bank v. J.J. Wright Oldsmobile, Inc.* (1989), 192 Ill. App. 3d 926, 549 N.E.2d 726 (action to eject lessee from premises was barred by *res judicata* where earlier mortgage lien foreclosure action had determined that the valid lease was in full force and effect; both actions involved determination of the parties' legal interests in possessing the real estate).

## C. APPLICATION OF SPECIFIC CASE LAW TO FACTS OF PENDING CASE

■■ Because fraud was never asserted in the foreclosure case we are in that "dimension of *res judicata* that bars matters that might have been litigated"; accordingly, the doctrine applies only if the first and second suit involve the "same cause of action." *Pfeiffer v. William Wrigley Jr. Co.* (1985), 139 Ill. App. 3d 320, 322, 484 N.E.2d 1187, 1189.

The Neals rely on *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959, to support their argument that the Florida and Illinois actions involve the same cause of action. *Housing Authority* involved a dispute over the ownership of a parcel of land. The plaintiff sought to enjoin the defendant's attempt to build a parking lot on land that plaintiff claimed to own. As the court found, however, the ownership of the parcel had been determined long since, in a 1932 Federal condemnation suit in which both parties' predecessors in interest had been joined. The two suits, therefore, were "substantially the same." That is, they sought the same relief—determination of ownership in a parcel of land. Accordingly, the Illinois Supreme Court held that *res judicata* principles barred the parties in the later case from essentially relitigating the earlier condemnation action.

In contrast, the pending lawsuit does not seek any interest in the Florida real estate, while the earlier foreclosure action had as its very point the adjudication of rights in the property. Therefore, the two cases cannot be viewed as the same cause of action.

Other cases that the Neals cite are distinguishable for the same reasons that we find *Housing Authority* inapposite. See *La Salle National Bank v. County Board of School Trustees* (1975), 61 Ill. 2d 524, 337 N.E.2d 19, *cert. denied* (1976), 425 U.S. 936, 48 L. Ed. 2d 177, 96 S. Ct. 1668 (plaintiffs who sought declaration of their reversionary interests in property were barred from seeking to restrain the school board's transfer of the property because prior condemnation proceedings had resulted in the vesting of fee simple title in the school board); *Village of Northbrook v. County of Cook* (1980), 88 Ill. App. 3d 745, 410 N.E.2d 925 (*res judicata* barred plaintiff from claiming a violation of its subdivision regulation when prior action between the parties had adjudicated titleholder's right to develop the property in accordance with approved plans).

The above cases involve a litigant's collateral attack on a prior adjudication of rights in real estate between the same or successor parties. That is not the situation before us.

Nor do we find persuasive another case that the Neals rely on, *Henry v. Farmer City State Bank* (7th Cir. 1986), 808 F.2d 1228, which the Neals call "an almost identical situation." In *Henry*, the Federal court held that an Illinois judgment of mortgage foreclosure against the owners of commercial property constituted a *res judicata* bar to the owners' later RICO action against the bank and numerous other defendants. The basis of the Federal action was the bank's alleged forgery in the making of the mortgage documents.

The Henrys were beneficial owners of commercial property held in a land trust. Defendant bank had given them two loans, both of which were secured by a mortgage lien on the business property. The Henrys defaulted on the loans, and the bank sought to foreclose its two mortgage liens. The trial court entered judgments of foreclosure and authorized a judicial sale of the property. Afterwards, the Henrys moved to set aside the sale of the property for various reasons, none of which asserted forgery in the making of the mortgage documents. Instead, the Henrys claimed they had failed to receive proper notice. The trial court rejected this contention and reconfirmed the sale, and entered deficiency judgments against the Henrys. On appeal to the Illinois Appellate Court, the Henrys raised a number of unsuccessful challenges to the foreclosure and deficiency judgments. At no time, either on trial or appeal in the State court, did the Henrys claim that one of the mortgages was a forgery or had been obtained through fraud.

Thereafter, the Henrys filed in Federal court under RICO and under 42 U.S.C. §1983 (1988), suing 29 defendants, including the sheriff

and State's Attorney of De Witt County; the auctioneer; the moving company that confiscated and transported the Henrys' personal property after the foreclosure sale; the Henrys' former attorneys; and directors, officers, and attorneys of the bank. The racketeering claims asserted in essence that bank officials had forged the second mortgage in the amount of $345,000. The defendants successfully moved to dismiss the suit for failure to state a claim. During the pendency of appeals from the dismissal of the claims, the Henrys went back into State court and filed a complaint naming eight of the Federal defendants and alleging various theories of common law fraud. The RICO defendants successfully moved the Federal district court to enjoin the State suit pending the outcome of the Federal litigation.

After reviewing the Henrys' appeal from the order issuing the injunction, the seventh circuit found no error in the district court's conclusion that the Henrys failed to state a claim under RICO, but held that the suit was barred in any event under *res judicata* because the Henrys had not raised their claims as a defense in the State court mortgage proceedings.

We cannot agree with the Neals that *Henry* is an "almost identical situation" to the one at bar. It is true that the Federal court cited the principle that a defendant in a prior action "may not relitigate a defense, which was available but not raised in a prior action, by making it the basis of a claim in a subsequent action against the original plaintiff which if successful would nullify the initial judgment." (*Henry*, 808 F.2d at 1234.) This is the same principle that is expressed in section 22(2)(b) of the Restatement (Second) of Judgments.

The Henrys' fraud claims were based on an allegedly forged mortgage document, however, not on a misrepresentation theory dependent on proof outside of the mortgage documents. If indeed the Henrys believed that one of the two liens the bank was foreclosing on had been forged or altered, the obvious place and time to raise the defense would have been at the original foreclosure proceeding. Instead, they launched a series of unsuccessful attacks on the judgment in the State court and then went to the Federal court after deciding that the mortgage document had been forged in the first place. Then, after the district court dismissed their suit for failure to state a claim on which relief could be brought, the Henrys went back to the State court to reincarnate the RICO action in the guise of common law theories. Such facts are tailor-made for application of a doctrine designed to promote judicial economy and curtail duplicative litigation.

The position of the plaintiffs in the pending case cannot be fairly compared to the orchestrations in *Henry*, however. The plaintiffs in

the instant case never challenged the Florida foreclosure proceedings or attempted to have the judgment set aside and have not filed numerous actions based on the same facts. In light of the pending controversy, it could be argued that they should have defended against the foreclosure action and asserted fraud as a means of rescinding the real estate transaction. But as long as the pending suit is not a means by which the Florida judgment is nullified, we believe it preferable to allow the suit to proceed. Rather than rescission and restitution, plaintiffs are seeking damages arising out of a fraudulent scheme that the Neals and the other defendants allegedly perpetrated. Their strategy may actually promote judicial economy, since the presentation of their proofs of fraud may now occur at one time in one place against all defendants who allegedly participated in the scheme. Moreover, it may not have been practicable or even possible for the plaintiffs to join the Illinois lawyer-defendants as counterdefendants in the Florida foreclosure action. We believe that such complexities should be considered when analyzing whether plaintiffs should be estopped from maintaining their lawsuit against the Neals.

*Res judicata* is an equitable doctrine capable of easy expression but sometimes difficult application. Courts should carefully examine the circumstances presented in a specific case to ensure that a party is not precluded from litigating a claim simply because it "might have" been raised, if the nature of the claim is sufficiently separate from that which was actually litigated. Another consideration here is that we see no prejudice to the Neals because they are not being required to twice defend against the fraud claim (or relitigate anything) and they were well aware of the pendency of the Illinois action during the Florida proceedings.

In fact, in reviewing the equities of the case on appeal, we find the latter point significant because of the timing of the Neals' motion to dismiss counts IV and V based on *res judicata*. The record reveals that the Illinois lawsuit was filed in November 1987, while the Florida foreclosure action was still pending. All defendants in Illinois were and are represented by the same counsel. In the months *before* the Florida court entered its final judgment, defendants' counsel appeared in the Illinois case and filed a series of motions for additional time to respond, to vacate technical defaults, and to strike the complaint. Since the Neals maintain in this appeal that the Illinois tort action is the *same* as the Florida foreclosure action, they could have moved to dismiss the Illinois action on the grounds that the Florida case was a "prior pending action" between the parties. (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(3).) It may be coincidence that the Neals waited

several months before raising the relevance of the Florida action as a bar to the Illinois action. Instead of promptly moving to dismiss on the basis of a prior pending action, the Neals were granted extensions of time and thus were able to assert the *res judicata* defense once the Florida court entered the final judgment of foreclosure and sale. Had the Neals promptly asserted the existence of a prior pending action as a grounds for dismissal, plaintiffs would have been accorded an opportunity to at least consider refiling their tort claim in Florida as part of the foreclosure action. While this factor may be of limited relevance in itself, we believe it has some bearing on the equities involved in applying *res judicata* in this case. See *Rotogravure Service, Inc. v. R.W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 525-26, 395 N.E.2d 1143, 1149 ("*[R]es judicata* should only be applied as fairness and justice require, and only to facts and conditions as they existed when the judgment was entered").

While we express no opinion as to the likelihood of plaintiffs' ultimate success in the pending lawsuit, we believe that they should not be barred by *res judicata* from presenting well-pleaded causes of action. As we have noted, plaintiffs' successful recovery in tort would not affect title to the Florida property or otherwise nullify the effect of the orders entered therein. Therefore, we reverse the dismissal of counts IV and V and remand for further proceedings.

Reversed and remanded.

JOHNSON, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:

The instant complaint, wherein the plaintiffs seek tort damages, alleges that the defendants, H. Wayne Neal and Rosemary Neal, fraudulently induced the plaintiffs to execute a mortgage and promissory note in connection with a purchase of Florida real estate. A Florida court had previously rendered a judgment foreclosing the mortgage and entering a money judgment against the plaintiffs on the promissory note. The trial court allowed the Neals' motion to dismiss the complaint on the basis that *res judicata* bars the action.

The supreme court of Illinois in the case of *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 251, 461 N.E.2d 959, 962, quoting *People v. Kidd* (1947), 398 Ill. 405, 408, 75 N.E.2d 851, 853, stated:

> "[A] final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar

to a subsequent action involving the *same* claim, demand or cause of action.' (Emphasis added.)"

The doctrine applies "not only to what actually was decided in the original action but also to matters which could have been decided in that suit." *La Salle National Bank v. County Board of School Trustees* (1975), 61 Ill. 2d 524, 529, 337 N.E.2d 19, 22, *cert. denied* (1976), 425 U.S. 936, 48 L. Ed. 2d 177, 96 S. Ct. 1668.

The majority holds that this action for money damages on the basis of fraud is not the "same cause of action" as the action in Florida in which the court granted foreclosure and ordered a money judgment against the plaintiffs. I respectfully disagree.

We have consistently held that a subsequent action is barred on the principle of *res judicata* if it arises out of "a single group of operative facts." (*Radosta v. Chrysler Corp.* (1982), 110 Ill. App. 3d 1066, 1069, 443 N.E.2d 670, 673; *Baird & Warner, Inc. v. Addison Industrial Park, Inc.* (1979), 70 Ill. App. 3d 59, 64, 387 N.E.2d 831, 838.) Professor Richard A. Michael, 4 Illinois Practice, Civil Procedure Before Trial section 41.5, at 315 (1989), urges that Illinois adopt Restatement (Second) of Judgments section 24(1), which states that when a valid and final judgment has been rendered, a plaintiff's claim is extinguished with respect to "all or any part of the transaction, or series of connected transactions, out of which the action arose." (Restatement (Second) of Judgments §24(1), at 196 (1982).) Professor Michael notes that the primary goal of the doctrine is "judicial economy coupled with avoidance of the unfairness to the defendant of incurring multiple costs and risks." (4 R. Michael, Illinois Practice §41.5, at 314 (1989).) I believe it is evident that the instant tort action for fraud in inducing the real estate purchase and the foreclosure action in the real estate purchase previously ruled on in Florida arise out of a common core of operative facts and are part of the same transaction. I would affirm the trial court.