639 A.2d 206

**KRIS JEN LIMITED Partnership, et al.**

v.

**FAIRFAX SAVINGS, F.S.B.**

**No. 1244, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

April 6, 1994.

John P. Seisman and Karl A. Phillips (John W. Nowicki and Nowicki & Tirabassi, on the brief), Bel Air, for appellants.

George A. Nilson (Ray L. Earnest and Piper & Marbury, on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., and BLOOM and CATHELL, JJ.

WILNER, Chief Judge.

This appeal arises, ultimately, from a foreclosure action filed in the Circuit Court for Harford County by appellee, Fairfax Savings, F.S.B. It involves the conflict, considered by the Court of Appeals in *Rowland v. Harrison*, 320 Md. 223, 577 A.2d 51 (1990), between the preclusion principles embodied in the doctrines of *res judicata*, collateral estoppel, and collateral attack and Maryland's permissive counterclaim rule.

*Procedural History*

In January, 1988, Kris Jen Limited Partnership borrowed $3,200,000 from Fairfax in order to finance construction of a housing development known as Wellington Woods. The loan was secured by a deed of trust on the property and by a guarantee signed by John Seisman, a general partner of Kris Jen, and his wife, Susan. On April 21, 1989, Fairfax sent a Notice of Default to Kris Jen and the Seismans, setting forth five alleged acts of default: (1) the Interest Reserve provided for in the loan documents had become depleted, and Kris Jen had failed to pay $30,637 in interest due, as demanded by Fairfax; (2) the loan matured on January 22, 1989; (3) the project had not been completed by January 22, 1989, as required by the Construction Loan Agreement; (4) Kris Jen had failed to provide additional funds for the project pursuant to the Construction Loan Agreement and as demanded by Fairfax; and (5) mechanics liens had been filed against the property.

When these defaults had not been cured to Fairfax's satisfaction, the bank's trustees, on April 25, 1989, filed an action to foreclose the deed of trust. Fairfax purchased the property at the foreclosure sale for $1,500,000. On July 24, 1989, Kris Jen filed an objection to ratification of the sale. In that objection, Kris Jen contended, essentially, that there had been no default. It averred that, pursuant to an agreement entered into in December, 1988, Fairfax had agreed to "deduct" interest payments on the loan from funds available in the construction account and had, in fact, done so, so that no interest was then due. Kris Jen also alleged that, in accordance with the December agreement, Fairfax had agreed to pay invoices of subcontractors and materialmen directly, without holdback, and to reimburse the construction fund from the proceeds received from the sale of units constructed by Kris Jen. The December agreement, as alleged by Kris Jen, was in the nature of a "work out" agreement, modifying the terms of the loan documents.

In further response to the notice of default that triggered the foreclosure, Kris Jen contended that the loan had not matured but rather had been extended by Fairfax, that the time for completion of the project had also been extended, that the provision in the December agreement for taking 100% of the proceeds from the sale of units satisfied the requirements of the Construction Loan Agreement for additional funds, and that mechanics liens had been filed only because Fairfax delayed making payments to the subcontractors and suppliers, in violation of its commitment. Additionally, Kris Jen complained that the price paid by Fairfax at the foreclosure sale was both unconscionably low and fraudulent to third-party creditors of Kris Jen and that $47,196 of the debt claimed by Fairfax was not due.

We assume that some of these allegations, if proved, would have caused the court to reject the report of sale, for they would have established that there was no act of default justifying the foreclosure and that the sale price was unconscionably low. They were never determined, however, for, over Fairfax's protest, Kris Jen was allowed to withdraw its objection. The withdrawal came in the form of an amendment to the objection to ratification, stating that Kris Jen had no objection to the ratification. Suspecting, with good reason, that this move was not intended for its ultimate benefit, Fairfax (1) opposed the amendment, and (2) proposed, as an alternative, that, if inclined to allow Kris Jen to withdraw its objection, the court, in its order of ratification, make specific findings of fact that the deed of trust was valid, that the loan was in default for each of the reasons set forth by Fairfax in its notice of default, that Fairfax had acted properly throughout and did not breach any agreements with Kris Jen, that the sale price was fair, and that the full amount stated in the Statement of Debt was due and payable.

The court overruled Fairfax's protest and declined to make any of the proposed findings. It allowed Kris Jen to withdraw its objection and then entered a simple order ratifying the sale. Thereafter, the auditor stated an account in the matter, which the court ratified. At some point, in a separate action

at law that has since been stayed, Fairfax proceeded against the Seismans on their guarantee agreement.

In January, 1990—some 10 months before the auditor's report was ratified, and thus while the foreclosure proceeding was still open—Kris Jen and John Seisman, appellants here, filed against Fairfax what eventually became a 10-count second amended complaint for compensatory and punitive damages and for injunctive and declaratory relief. For the most part, the underlying bases for this action are the same as those set forth in Kris Jen's initial objection to the report of sale. Appellants allege that, pursuant to the December, 1988 agreement, the parties restructured the loan to provide that interest payments would come initially from the construction fund and that Fairfax would pay all outstanding invoices of subcontractors and materialmen directly and without retainage. They aver that in February or March, 1989, Fairfax stopped paying those invoices in violation of the agreement and that caused numerous mechanics' liens to be filed. They contend, as they did in the initial objection, that the notice of default sent by Fairfax was inaccurate in each of its particulars but that, despite notice of the inaccuracies, Fairfax proceeded to foreclose.

One new allegation, not set forth in the objection to the sale, is that, by its silence, Fairfax had agreed to allow Kris Jen to use certain funds collected in advance from buyers to finance the construction, and that Fairfax later demanded that Kris Jen place those funds in escrow until construction was complete, thereby causing a significant shortage of money available to Kris Jen. As part of this allegation, appellants aver that a substantial part of the sale price (and construction cost) for the homes arose from optional features that were not part of the basic house but could be ordered at extra cost by the buyers and that, under the individual home sales contracts, the price for those options was to be paid by the buyers in advance. Appellants were expecting to use those advanced funds to supplement the construction financing, and they complain that Fairfax, by its agents, required the escrowing of those funds, thereby making them unavailable to help defray

the cost of construction. That shortfall, they aver, contributed significantly to their financial problems.

Upon these assertions, appellants charged Fairfax with breach of a fiduciary duty owed to Kris Jen by failing to keep its various promises and commitments (Count I); breach of its duty of good faith and fair dealing to Seisman by inducing him to guarantee Kris Jen's obligation upon the *sub silentio* promise that Kris Jen could use the advance collections for optional improvements to help finance the construction, by doing the other things previously noted, and by forcing a default on the loan and foreclosing on the property, thereby increasing Seisman's risk as a guarantor (Count II); breach of its duty of good faith and fair dealing to Kris Jen and Seisman by misleading them as to Fairfax's willingness to approve certain unspecified "work out terms" with Wellington Woods's creditors and by forcing a default (Count III); negligent supervision of its loan officers (Count IV); tortious interference with Kris Jen's contractual relations with its home-buying customers (Count V); fraud with respect to the use of the money collected in advance for optional additions to the houses being constructed (Count VI); negligent misrepresentation with respect to that money (Count VII); breach of the December, 1988 agreement (Count VIII); and defamation of Seisman by telling subcontractors and materialmen that there was no work out agreement when they knew that Seisman had made contradictory statements to those creditors (Count IX).

In Count X, Seisman contends that, because Kris Jen was not in default, Fairfax had no ground on which to foreclose, and that it therefore had no basis for pursuing Seisman on his guarantee. He asked for a declaratory judgment to that effect and for an injunction restraining Fairfax from prosecuting its action against him on the guarantee agreement.

Fairfax moved to dismiss appellants' second amended complaint on a number of grounds, including that it was barred by the coalescing doctrines of *res judicata,* collateral estoppel, and collateral attack because it sought to relitigate matters

that were either resolved by the ratification of the foreclosure sale or that could have been raised and resolved in that action.

In a Memorandum Opinion and Order entered on May 12, 1993, the court concluded that most, though not necessarily all, of the causes of action and relief sought were indeed barred by those doctrines, as explained and applied by this Court in *Klein v. Whitehead*, 40 Md.App. 1, 389 A.2d 374 (1978) and *Shepard v. Nabb*, 84 Md.App. 687, 581 A.2d 839 (1990). Specifically, it held that appellants were barred from asserting that there was no default on the loan, that any default was induced or coerced by Fairfax, that the sale was illegal or fraudulent, that the price was inadequate, or that they suffered damages from the foreclosure. Those issues, the court concluded, had been resolved by the ratification order and could not be relitigated, even under the principles enunciated in *Rowland v. Harrison, supra,* 320 Md. 223, 577 A.2d 51.

The court observed that, although some of the allegations made in the complaint were not adjudicated in the foreclosure action and thus might not be barred under any of the preclusion doctrines, they might be susceptible to dismissal for other reasons. The overlap or inter-relationship between those matters that the court believed had been adjudicated and those that were new was such, however, that the court did not feel comfortable in dismissing the complaint outright, and it did not address the non-preclusion defenses. Instead, it dismissed the complaint but gave appellants leave to amend if they could do so without relying on allegations already deemed to be adjudicated or subject to *res judicata*. Appellants expressly declined to amend, so the court then entered a final order dismissing the complaint. This appeal ensued, the single issue presented by appellants being whether the dismissal contravened this State's permissive counterclaim rule, as explicated in *Rowland v. Harrison.*

## Discussion

Until 1990, Maryland case law took a strict view against allowing a party to litigate in a second case issues that either

had been litigated or that could have been litigated in an earlier case. If the two causes of action were regarded as the "same"—i.e., if the evidence necessary to sustain a judgment for the plaintiff in the second case would have authorized a judgment for him in the first—the judgment in the first case was regarded as *res judicata*. As such, it served to preclude raising in the second case not only matters actually litigated in the first case but also those matters that could have been litigated in that case. If there was not that identity of evidence, and thus the two cases were not regarded as the "same" cause of action, only those determinations of fact actually adjudicated in the first case were regarded as conclusive in the second.

As we explained in *Klein v. Whitehead, supra,* these principles, denoted as "estoppel by judgment," come into play when the plaintiff does not challenge the existence or validity of a judgment allegedly entered in an earlier case but rather questions the effect of that judgment or decree upon him: "Conceding that the judgment exists and is valid, he asserts that it does not apply to or settle the issues sought to be litigated in the subsequent proceeding." *Id.,* 40 Md.App. at 21, 389 A.2d 374. A third principle prevented a person from collaterally challenging the judgment itself in a subsequent proceeding—from attempting to impeach the judgment in an action other than the one in which the judgment was entered. *Id.* at 20, 389 A.2d 374.

*Klein v. Whitehead* is similar in many respects to the case now before us. There, too, a mortgagor/debtor allowed a foreclosure and other debt collection actions to proceed without defense and then, in a subsequent action, sued the mortgagee/creditor for wrongfully bringing those proceedings. We described the nature of the second action at 21–22, 389 A.2d 374:

"Appellant is not attempting here to vitiate the earlier proceedings—to recover the land or the chattels, to annul the deficiency decree or the confessed judgment, to expunge anything from the dockets or records of the Circuit Court for Wicomico County. He seems content to allow those

judgments and decrees, and the actions taken in execution of them, to stand. He does not challenge the jurisdiction of the court or the facial regularity of the prior proceedings. His contention is that the earlier proceedings were wrongfully—tortiously, fraudulently—brought; and, for that reason, he seeks civil damages against those whom he accuses as the tortfeasors—the successful suitors in the prior proceedings and their attorneys."

With the possible exception of the defamation claim (Count IX), this is almost precisely what appellants are doing here, and, in *Klein v. Whitehead,* we said that such a claim amounts to a prohibited collateral attack upon the prior judgment. Quoting from an Indiana case, which, in turn, was quoting from the then-current edition of *Freeman on Judgments,* we said, at 22, that "[t]he settled policy of the law forbidding that a matter once adjudicated shall be again drawn in issue while the former adjudication remains in force, does not permit the prosecution of an action for obtaining judgment by false and fraudulent practices, or by false and forced evidence."

The holdings announced in *Klein v. Whitehead,* which we believe fairly summarized and applied then-existing Maryland law, would certainly support the circuit court's conclusions in this case. It is evident, however, that those holdings have been modified by *Rowland v. Harrison,* and what we now need to do is consider the extent of the modification.

That case arose from a transaction in which Ms. Rowland sent her horse to Dr. Harrison, a veterinarian, for boarding and treatment for a vaginal infection. When she retrieved the horse, Ms. Rowland found it suffering not only from the vaginal infection but from other maladies as well, and eventually it had to be destroyed. She therefore refused to pay Dr. Harrison's bill, accusing him of malpractice.

Harrison sued Rowland in the District Court to collect for the boarding and treatment. Rowland had the case removed to the circuit court and, in a separate action, sued Harrison for malpractice. Failing in her attempt to have the cases consolidated, Rowland filed a counterclaim in the debt action but,

when that action was called to trial before she had an opportunity to conduct discovery or otherwise prepare her malpractice case, she consented to a voluntary dismissal of the counterclaim without prejudice and offered no evidence as to any malpractice. On that state of the record, the court gave judgment for Harrison without considering Rowland's claim of malpractice.

Harrison thereupon moved for summary judgment in Rowland's separate malpractice action on the ground of *res judicata*—that the allegation of malpractice could have been asserted as a defense or counterclaim in the debt action and that Rowland was barred from litigating it in a subsequent action. The circuit court granted the motion, but the Court of Appeals reversed, holding that the malpractice claim was not barred.

In reaching this result, the Court gave effect to Maryland's permissive counterclaim rule, noting that Md.Rule 2–331(a) *permits* but does not *require* a party to assert as a counterclaim any claim that he or she has against any opposing party, "whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Recognizing the tension between this permissive counterclaim rule and the preclusory effect of *res judicata*, the Court adopted the principles stated in the *Restatement (Second) of Judgments*, § 22, as providing the proper balance. In relevant part, § 22 provides:

"(1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on the claim except as stated in Subsection (2).

(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if . . . (b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action."

In the *Rowland* case, the Court concluded that Ms. Rowland's malpractice claim would not have the effect mentioned in subsection (2)(b) of the Restatement rule, as it would neither nullify the judgment entered in the debt action nor impair any rights established by that judgment. In reaching that conclusion, the Court noted Comments b. and f. to § 22, which explain the caveat in subsection (2). Comment b., captioned *"Where facts constituting defense are ground for counterclaims,"* states:

"In the absence of a statute or rule of court otherwise providing, the defendant's failure to allege certain facts either as a defense or as a counterclaim does not normally preclude him from relying on those facts in an action subsequently brought by him against the plaintiff. See Subsection (2)(b) and Comment f thereon for discussion of the exception to this rule. The failure to interpose a defense to the plaintiff's claim precludes the defendant from thereafter asserting the defense as a basis for attacking the judgment.... But the defendant's claim against the plaintiff is not normally merged in the judgment given in that action, and issue preclusion does not apply to issues not actually litigated.... The defendant, in short, is entitled to his day in court on his own claim."

Comment f., setting forth the "[s]pecial circumstances under which failure to interpose a counterclaim will operate as a bar," provides, in relevant part:

"Normally, in the absence of a compulsory counterclaim statute or rule of court, the defendant has a choice as to whether or not he will pursue his counterclaim in the action brought against him by the plaintiff. There are occasions, however, when allowance of a subsequent action would so plainly operate to undermine the initial judgment that the principle of finality requires preclusion of such an action. This need is recognized in Subsection (2)(b).

For such an occasion to arise, it is not sufficient that the counterclaim grow out of the same transaction or occurrence as the plaintiff's claim, nor is it sufficient that the facts constituting a defense also form the basis of the

counterclaim. *The counterclaim must be such that its successful prosecution in a subsequent action would nullify the judgment, for example, by allowing the defendant to enjoin enforcement of the judgment, or to recover on a restitution theory the amount paid pursuant to the judgment . . ., or by depriving the plaintiff in the first action of property rights vested in him under the first judgment. . . ."*

(Emphasis added).

The final holding of the *Rowland* Court was stated succinctly at 320 Md. at 235–36, 577 A.2d 51:

"Thus, given the permissive nature of our counterclaim rule and the position taken by the Restatement, which we adopt, we hold that where the same facts may be asserted as either a defense or a counterclaim, and the issue raised by the defense is not litigated and determined so as to be precluded by collateral estoppel, the defendant in the previous action is not barred by res judicata from subsequently maintaining an action on the counterclaim."

(Footnotes omitted).

That holding is now the law of Maryland; it supplants any earlier pronouncements inconsistent with it. Although the Court spoke of *res judicata* in its holding and did not mention, by name, the allied, but different, principle barring a collateral attack on the judgment, we believe that the holding encompasses that doctrine as well. To some extent, the caveat explained in Comment f. to Restatement § 22 addresses the concerns underlying the prohibition against collateral attack, but to the extent it does not, that prohibition too is now limited.

The issue, then, comes down to whether the various causes of action pled by appellants would effectively "nullify" or undermine the judgment entered in the foreclosure action. If they would have that effect, the permissive counterclaim rule will not save them, for they will fall within the caveat expressed in Restatement § 22(2)(b) and Comment f. If they would not have that effect, they are not subject to dismissal

either by application of *res judicata* or by the ban on collateral attack.

Fairfax relies, principally, on three cases—*Shepard v. Nabb, supra,* 84 Md.App. 687, 581 A.2d 839; *Henry v. Farmer City State Bank,* 808 F.2d 1228 (7th Cir.1986); and *Del Turco v. Peoples Home Sav. Ass'n,* 329 Pa.Super. 258, 478 A.2d 456 (1984)—for its assertion that appellants' claims are now barred.

In *Shepard v. Nabb,* the plaintiff, Ms. Shepard, had been appointed as the trustee of two testamentary trusts. With the active assistance of the defendant lawyers, the beneficiary of those trusts petitioned to have the court assume jurisdiction over the trusts and remove Ms. Shepard as trustee. Although Ms. Shepard initially resisted that effort, on the day of trial she withdrew her objection and consented to the relief. She later sued the lawyers who had represented the petitioner, and others, seeking damages for their conduct in bringing and prosecuting the action for her removal. Relying on *Klein v. Whitehead,* the circuit court dismissed her complaint. On appeal, Ms. Shepard argued that *res judicata,* collateral estoppel, and collateral attack were inapplicable because the defendants had not been parties to the removal action, which was an *in rem* proceeding. 84 Md.App. at 693–94, 581 A.2d 839; also appellant's brief in No. 83, September Term, 1990. She did not raise a permissive counterclaim argument, and, as a result, we did not consider that issue. We rejected the argument she did present and so affirmed the dismissal of those counts. *Shepard v. Nabb* does not constitute an interpretation or application of *Rowland,* which was not relied on by any of the parties.

In *Henry,* the plaintiffs, who were the beneficial owners of certain land held in trust, borrowed $60,000 from a bank to which they already owed $345,000. The trustee authorized and executed two mortgages on the property—a first mortgage securing the $60,000 loan and a second mortgage securing the pre-existing debt. When the Henrys defaulted on both loans, the bank foreclosed on both mortgages, purchased

the land at the foreclosure sale, and obtained deficiency judgments.

Although the Henrys contested the foreclosure and the judgments on a number of grounds relating to their personal liability, the amount of the debt, and the notice given, they never asserted that the second mortgage was a forgery or was procured by fraud. After losing that case, they filed suit in Federal court against the bank and a lot of other people claiming violations of the RICO statute on the ground that the second mortgage was procured by fraud and was a forgery. When the court dismissed the RICO count, the Henrys appealed.

The Seventh Circuit Court of Appeals agreed that the RICO claim was barred by *res judicata*. In reaching that conclusion, the Court viewed the claim of fraud and forgery as directly attacking the State court judgments. The Henrys sought to have the second mortgage and the note it secured cancelled and collection of the note enjoined which, the Court held, could impair the rights established in the foreclosure proceeding.

In *Del Turco,* the plaintiff borrowed $475,000 from the bank to finance construction of an office building and gave the bank a mortgage on two pieces of property. When the plaintiff defaulted, the bank foreclosed and had the properties sold. The plaintiff did not contest the foreclosure or the schedule of distribution. Instead, he later filed an action against the bank for trespass and assumpsit, complaining that the bank failed to apply certain credits, that the attorneys' commissions were too high, and that the bank acted maliciously in not allowing the plaintiff to sell one parcel free of the mortgage in order to apply the proceeds to the mortgage. The court dismissed the action on *res judicata* grounds, holding that it presented "a restitutionary theory of recovery that, in essence, challenges the amount of debt paid [the bank] pursuant to judgment in the mortgage foreclosure action." 478 A.2d at 463. Because the plaintiff was seeking to recover sums that the foreclosure judgment determined were due the bank, the court viewed the

litigation, if successful, as operating to undermine the initial judgment and, for that reason, declared it barred.

A different result was reached in *Carey v. Neal, Cortina and Associates*, 216 Ill.App.3d 51, 159 Ill.Dec. 551, 576 N.E.2d 220 (1991). The plaintiffs there had purchased, through a corporation they formed, certain Florida real estate upon the recommendation of their attorneys, one of whose parents owned the property. The corporation executed a purchase money mortgage to the sellers, which the plaintiffs personally guaranteed. Eventually, the sellers foreclosed on the mortgage and obtained from a Florida court a final judgment of foreclosure. The plaintiffs did not defend that action but instead, even while that case was pending, sued their attorneys and the sellers in Illinois, claiming that the defendants had misrepresented the value of the property and its income potential. From a judgment dismissing the claims against the sellers on *res judicata* grounds, the plaintiffs appealed.

The appellate court reversed, holding that the action was not barred by *res judicata*. Noting that Florida did not have a compulsory counterclaim rule and therefore following § 22 of the Restatement, as explicated in Comments b. and f., the court determined that the plaintiffs were not contesting the foreclosure or their liability on the note and were not asserting any rights in the property. Distinguishing *Henry* on its facts, the court concluded that, while it could be argued that the plaintiffs "should have defended the foreclosure action and asserted fraud as a means of rescinding the real estate transaction ... as long as the pending suit is not a means by which the Florida judgment is nullified, we believe it preferable to allow the suit to proceed." *Id.* 159 Ill.Dec. at 559, 576 N.E.2d at 228.

Somewhat less in point, but worthy of mention, is *State Exchange Bank of Culver v. Teague*, 495 N.E.2d 262 (Ind.App. 1986). The plaintiffs there were indebted to the bank on a note secured by a chattel mortgage on their farm property, crops, and livestock. They defaulted, and the bank, armed with a writ of replevin, seized every bit of personalty on the

farm. A dispute arose as to just what was seized and what its value was. The property was subsequently sold in an unlawful manner. Although the plaintiffs did not defend the replevin action, they later sued the bank for the manner in which it proceeded with the repossession. The bank contended that the suit was barred by *res judicata.* Relying on Restatement § 22, the appellate court agreed, but only in part. It held that the plaintiffs were barred from relitigating the value of the livestock or the reasonableness of the sale, which were matters adjudicated in the replevin case, but left them free to sue for the "grossly mishandled repossession." *Id.* at 268.

We believe that the *Henry* and *Del Turco* cases are distinguishable on their facts and that *Carey* is closer in point.

We do agree with Fairfax that that part of Count X of the second amended complaint in which appellants seek a declaratory judgment that they were not in default and that the foreclosure was without basis is barred by *res judicata,* and likely collateral estoppel as well, and is not saved by the permissive counterclaim rule. One aspect of *Klein v. Whitehead* that we believe remains valid is the notion that

> "in ordering the foreclosure, ratifying the sale, and ratifying the auditors' reports in the foreclosure proceedings . . . the court, implicitly if not directly, concluded that the obligations were valid, due and owing, and in default in the respective amounts alleged. To the extent that these are issues in this current case, they may be said to have been previously litigated."

40 Md.App. at 19, 389 A.2d 374. The declaratory relief sought in Count X would, in fact, impeach and in part nullify the judgment entered in the foreclosure action. We also conclude that it would be inappropriate, for other reasons, to enjoin Fairfax from proceeding with its pending action to enforce the guarantee agreement, which is also sought in Count X. Just as appellants claim a right not to have to litigate their claims in Fairfax's action, so Fairfax has a right to litigate its claim against appellants in *its* action.

■ With respect to the other counts, appellants are not seeking to overturn the foreclosure or to escape from its effect, nor are they making any claim to the property itself. Any recovery sought for an alleged unreasonableness in the sale price or for damages accruing from the loss of the property occasioned by the foreclosure would be barred, as in the *Teague* case, for that *would* undermine the existing judgment, but compensatory damages for breach of duty, negligence, fraud, misrepresentation, or defamation (or, to the extent they otherwise may be allowed, punitive damages for those alleged transgressions) would not have that effect, and so are not barred by *res judicata*.[1]

It is evident that the only ground upon which the second amended complaint was dismissed was that of *res judicata*, and, except as we have just stated, we believe that the court erred in applying that defense. We shall therefore reverse the judgment and remand the case for further proceedings. The various counts may be subject to other defenses raised by Fairfax, but they should be considered and ruled upon in the first instance by the trial court.

JUDGMENT REVERSED; APPELLEE TO PAY THE COSTS.

■

---

1. Appellants, in effect, are exercising two rights accorded them by law. One is to have their claims adjudicated in their own action, the nature and timing of which they can, to some extent, control. The other is to have those claims that are not exclusively equitable in nature tried by a jury, rather than by the court in an *in rem* proceeding.

Appellants could have filed a counterclaim or a separate action and asked that the foreclosure action be stayed pending a resolution of their claims by a jury. *See Higgins v. Barnes*, 310 Md. 532, 530 A.2d 724 (1987). That would have allowed a contemporaneous resolution of all issues in dispute. But, as counsel correctly pointed out at oral argument, appellants had three years within which to file their claims, subject to any possible laches defense, and therefore were not required to bring their action at an earlier time.