Albert *vs.* Hamilton.

> *Judgment reversed, with costs,*
> *and new trial awarded.*

(Decided 17th November, 1892.)

JACOB POWLES ALBERT, GEORGE WILLIAM ALBERT, and CHARLES RICHARD ALBERT *vs.* CLARA HAMILTON, widow, sole executrix, and residuary legatee of WILLIAM T. HAMILTON.

*Sale under Foreclosure of Mortgage—Res judicata.*

Under section 9 of Article 66 of the Code, enacting that the Court shall have full power to hear and determine any objections which may be filed against the sale of lands under a mortgage, by any person interested in the property; and under section 11, providing that, when the sale is confirmed by the Court, it shall pass all title which the mortgagors had at the time of the recording of the mortgage, the validity of the mortgage may be determined under exceptions to the ratification of the sale; and where such exceptions have been overruled, and the sale has been ratified, no action can be brought to determine the validity of such mortgage.

Where some of the mortgagors brought a suit in equity to have the sale under the mortgage set aside and vacated, and the other mortgagors knowing of the pendency of the suit, neglected or wilfully refused to take part in the proceedings, they are concluded by the judgment therein as effectually as if they had been parties named on the record.

Albert *vs.* Hamilton.

APPEAL from the Circuit Court for Washington County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BRYAN, FOWLER, PAGE, McSHERRY, and BRISCOE, J.

*Alfred D. Merrick,* and *Adam S. Garis,* for the appellants.

*J. Clarence Lane,* (with whom were *Henry H. Keedy,* and *George W. Smith, Jr.,* on the brief,) for the appellee.

BRYAN, J., delivered the opinion of the Court.

Jacob P., George W. and Charles R. Albert filed a bill in equity against Clara Hamilton, widow, executrix, and residuary legatee of William T. Hamilton, deceased. The allegations were that the decedent, in his life-time, by false and fraudulent representations, procured a mortgage of certain land from them, and from their mother, and from their brothers, Frederick and Robert, and their sister, Anna L. Hammaker, and her husband. The charge is set forth with much particularity of circumstance and detail. It is further alleged that, under proceedings by virtue of the mortgage, the land was sold by the mortgagee, and a portion of it purchased by him; and that the sales were reported by him to the Circuit Court for Washington County, sitting as a Court of equity, in a cause designated as No. 3688; and that exceptions were filed to the ratification of the sales by the mother of the complainants and their brothers, Frederick and Robert, and their sister, Anna L. Hammaker, and her husband; that afterwards, in June, 1886, the said mother and brothers of the complainants and their sister and her husband, filed a bill

in equity against Hamilton in the same Court (being designated as No. 3752), in which they charged that the said mortgage was obtained by fraud of the mortgagee, and prayed that it should be set aside and vacated; that this cause was submitted to the Court for decision without arguments, briefs, or any attention to the interests of the complainants on the part of their solicitor; that all the papers in the cause were removed and abstracted from the clerk's office, and that no trace could be found of them until within the last year, and that the abstraction of the papers was under and by the authority of said Hamilton. It was further alleged that he died November, 1888, leaving a will by which his widow, the present defendant, was made executrix and residuary legatee. The prayer of the bill was that the said mortgage should be set aside and annulled, and for general relief. It is not distinctly stated in the bill of complaint what was the final disposition of the cases, No. 3688 and No. 3752. But the records of these cases were offered in evidence. It appears that in No. 3688 the exceptions to the sales were overruled, and the sales ratified by the Court after hearing evidence for the exceptants and respondents, and after filing an opinion in which the questions presented were fully discussed; and that the auditor's report making the distribution of the proceeds of the sale was finally ratified and confirmed; and that the report showed a balance of $833.17 due to the mortgagee. It was not alleged in the exceptions to the ratification of the sales that the mortgage was fraudulent, or that it was invalid for any reason. It also appears that in No. 3752 the bill was dismissed, with costs, after an elaborate and well considered opinion by the Court, and that George and Charles, two of the present complainants, were examined as witnesses in the cause. Mrs. Hamilton, the defendant in the present cause. answered the bill of complaint, and with great distinct-

ness denied all the charges of fraud. A good deal of testimony was taken in the cause, all of the complainants testifying in their own behalf, and all of the other mortgagors being examined as witnesses on their call. Exceptions were filed to the competency of these witnesses. After a hearing, the Court dismissed the bill, with costs, and the complainants appealed.

The Court, sitting in equity, had jurisdiction of the questions arising under the proceedings to enforce the mortgage. By the ninth section of Article 66, of the Code, it is enacted that it should have full power to hear and determine any objections against the sale of the land which might be filed by any person interested in the property, and that it might confirm or set aside the sale; and by the eleventh section it is provided that when the sale is confirmed by the Court, it shall pass all title which the mortgagors had at the time of the recording of the mortgage. Until the sale is reported by the mortgagee all the proceedings are *ex parte*; but when the report is made, an opportunity is afforded to all parties interested to make their objections to the sale. As the ratification of the sale will pass all the title of the mortgagors, it must follow that they have a right in objecting to the ratification, to show, if they can, that their title ought not to pass. If this were not the case, their title would, under the terms of the Act, be taken from them without a hearing. If the mortgage under which lands are sold is void for any cause, undoubtedly this is a most sufficient reason why the sale should not be ratified which takes away the title of the mortgagor. The statute says, that the Court "shall have full power to hear and determine any objections which may be filed against the sale;" not merely objections to the regularity of the mode in which the sale was conducted. The object was to enable mortgagors and others to prevent the ratification of a sale which would unjustly deprive them of

their property. The purpose of this legislation was to provide a more expeditious and less expensive method of enforcing mortgages than the former proceeding by formal bill in equity; but not, by any means, to impair or defeat the right of the mortgagor to be heard in defence of his property. And in enabling him to make *any objections against a sale,* which would take away his title, the statute has preserved to him his unquestionable right to show that the mortgage was invalid, and therefore did not justify a sale of his property. Under a formal bill in equity the Court in a proper case decrees that a sale shall be made, and appoints a trustee to execute its decree; and after the sale is made, it hears objections to the mode in which it has been conducted; but in proceedings under the statute, the question of sale comes before the Court for the first time when the sale is reported for ratification, and then all objections against the sale are to be heard and determined. The difference is, that in the one case the propriety of making a sale is decided before the decree is passed; and in the other all questions are decided on the ratification. The right of the mortgagor to make his defences is the same in each case. Many expressions may be found in our Reports, which taken out of their natural connexion would seem to indicate a different conclusion from that which we have reached; but all such expressions must be construed in reference to the case which the Court was considering. When the question was directly presented in *Basshor & Co. et al. vs. Stewart, &c.,* 54 *Md.,* 376, in exceptions to the ratification of a mortgage sale which were filed by subsequent lienors, this Court, without hesitation, considered and decided an objection alleging the invalidity of the mortgage. In the local law of Baltimore City a decree for the sale of mortgaged real and leasehold property is authorized before default, in cases where the mortgagor declares his assent in the mortgage. The trustee ap-

pointed by the decree is required to report the sale to the Court "for its consideration and ratification or rejection;" and it is provided that any allegations may be made to show that the sales ought not to have been made. Article 4, section six hundred and ninety-six. It is well settled that the proceeding under this local law " being *ex parte* until after the decree and the sale, the propriety of the decree as well as the validity of the sale thereunder may be inquired into, and contested after the passage of the order of ratification *nisi*, and before the final order of confirmation has been passed." *Seebold vs. Lockner and Wife*, 30 *Md.*, 138. The language of the local law and that of Article 66, section nine, is very similar, and their purposes were the same; it is reasonable that they should receive the same construction. It is then our opinion that the validity of the mortgage in the present case might have been determined under exceptions to the ratification of the sales. If this be so, the question ought at that time to have been presented to the Court for decision. It is not in the power of a party to split up a subject of litigation into portions, and bring them before a Court of justice for adjudication in successive suits. In *State vs. Brown and Brown, Trustees*, 64 *Md.*, 204, this Court said that the principle of *res adjudicata* "extends, not only to the questions of fact and of law, which were decided in the former suit, but also to the grounds of recovery or defence which might have been, but were not presented;" and also "the plea of *res adjudicata* applies, except in special cases, not only to the points upon which the Court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." We think, therefore, that the ratification of the sale determined that the mortgage was valid and that the

parties to the proceedings are precluded from further litigation of the question. We see no reason why the statute law should not have full effect, when it declares that the confirmation of the sale by the Court shall pass all the title which the mortgagors had in the mortgaged premises at the time the mortgage was recorded.

But, nevertheless, after the ratification of the sale all of the mortgagors (except these complainants and the wife of one of them,) filed a bill in equity, (No. 3752,) charging that the mortgage was obtained on false and fraudulent representations, and was null and void, and praying that it might be vacated. After a full hearing, the Court dismissed the bill, with costs; and now after the death of the mortgagee this suit is brought, and the attempt is made to sustain the charges on the testimony of the living parties to the cause of action. Their evidence is, of course, incompetent; but independently of this consideration, it is a great hardship to the representative of the deceased mortgagee to be subjected to a repetition of this litigation. These complainants were proper and necessary parties to suit No. 3752, inasmuch as it sought the rescission of a deed of which they were co-makers. And if the objection had been made by the defendant, the Court would have required that they should be made parties on penalty of dismissal of the bill of complaint. It is contrary to the policy of the law to allow the same question to be separately litigated by every person interested in it. Suppose a suit had been brought by one of these mortgagors alone for the annulment of this mortgage, and when that failed, suits had been brought by each one of them successively, would it be contended that they ought to be entertained by the Courts? These complainants knew of the pendency of the former suit; they ought to have been made parties to it, and they would have been made parties on their own petition. They, by their own neglect or wilful refusal,

lost the right to take part in the control of the proceedings, examine and cross-examine witnesses, and appeal from the decree; they, therefore, are embraced within the rule, so frequently declared, that persons who are directly interested in the suit and have knowledge of its pendency, and who refuse or neglect to appear and avail themselves of their rights, are concluded by the proceedings as effectually as if they were parties named on the record. *Robbins vs. Chicago*, 4 *Wallace*, (*S. C.*,) 672; *Parr and Cockey vs. State, use of Cockey*, 71 *Md.*, 236.

For the reasons which we have stated, the decree in this case must be affirmed. But inasmuch as the bill of complaint makes most serious charges against the character of an eminent and highly honored citizen, now deceased, who in his life-time always sustained an unblemished reputation, we deem it our duty to say that they are entirely refuted by the evidence, even if the incompetent testimony is considered which was offered in behalf of the complainants.

*Decree affirmed, with costs.*

(Decided 17th November, 1892.)