655 A.2d 1265

FAIRFAX SAVINGS, F.S.B.

v.

KRIS JEN LIMITED PARTNERSHIP et al.

No. 82, Sept. Term, 1994.

Court of Appeals of Maryland.

March 27, 1995.

2

**4**

Ray L. Earnest (George A. Nilson, Piper & Marbury, on brief) Baltimore, for petitioner.

Karl A. Phillips (John W. Nowicki, Nowicki & Tirabassi, P.A., John P. Seisman, Jr., all on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RODOWSKY, Judge.

This case is an attempt to impose lender liability. Respondents are a limited partnership mortgagor and its general partner-loan guarantor. They sued the lender-petitioner after the mortgage had been foreclosed. The Circuit Court for Harford County held that certain core allegations of the respondents' complaint were precluded, under *res judicata* principles, by the judgment in the foreclosure action. The Court of Special Appeals reversed. *Kris Jen Ltd. Partnership v. Fairfax Sav., F.S.B.*, 100 Md.App. 25, 639 A.2d 206 (1994). We granted the lender's petition for certiorari. Our review of Maryland mortgage foreclosure law, in the light of contemporary claim and issue preclusion principles, supports the circuit court's analysis.

In January 1988 Kris Jen Limited Partnership (Kris Jen) borrowed $3,200,000 from Fairfax Savings, F.S.B. (Fairfax) in order to construct a development of eighteen luxury, single family townhouses in Bel Air. A loan agreement and a note evidenced the loan. It was secured by a deed of trust on the Kris Jen property and by personal guaranties signed by John P. Seisman (Seisman), the general partner of Kris Jen, and by Seisman's wife, Susan E. Seisman. The loan was due January 22, 1989, but Kris Jen had the option of obtaining two extensions, each for a period of three months. Kris Jen avers that

as of December 1988 the loan had been extended for six months.

On April 21, 1989, Fairfax notified Kris Jen that the loan was in default. The notice specified as events of default the maturity of the loan on January 22, 1989, Kris Jen's failure to complete the project by that date, the filing of mechanic's liens against the property, and Kris Jen's failure to pay, as Fairfax had requested by letter of April 10, 1989, a refresher of $30,637.04 for the interest reserve account under the loan agreement and a refresher of $1,650,000 for the construction account under the loan agreement.

Fairfax instituted a foreclosure proceeding in the Circuit Court for Harford County on April 25, 1989. The property was sold on June 19, 1989, and the substituted trustees reported the sale to the court on June 22, 1989. An objection to ratification of the foreclosure sale was filed by Kris Jen on July 24, 1989. Thereafter, as reflected by docket entries from the mortgage foreclosure case filed as exhibits in the subject action, a considerable amount of discovery was undertaken.

In January 1990 Kris Jen advised the court that it had "no objection in [the foreclosure] proceedings" to ratification of the sale. Fairfax, however, opposed withdrawal of the objections and, alternatively, tendered a form of order of ratification that expressly would have adjudicated certain issues between Kris Jen and Fairfax. The court permitted Kris Jen to withdraw its objections and ratified the sale on February 21, 1990, but without embellishing the order in the fashion urged by Fairfax.

The subject action, with a prayer for jury trial, had been instituted on January 31, 1990. Prior to the entry of judgment in this action a final order of ratification of the auditor's report was passed in the foreclosure action. A third action, brought by Fairfax on a confession of judgment given in connection with the construction loan guaranty, has been

stayed.[1] The circuit court decided the subject action at the stage of a second amended complaint to which Fairfax had filed a motion to dismiss.

The second amended complaint by Kris Jen and Seisman (Plaintiffs) consists of ten counts, set forth in 110 paragraphs over thirty-one pages. Fundamentally, four groups of allegations are recycled through the complaint under the labels of various legal theories. Our synthesis of the allegations in each group is presented below.

At the inception of the project, Kris Jen offered prospective purchasers optional features in its townhouses. The form of contract between Kris Jen and a purchaser required the cost of the options to be paid by the purchaser before construction began, and the contract also referred to holding those payments for optional features in an escrow account "until settlement." This contract was prepared by counsel for Kris Jen. As alleged in the complaint, Kris Jen intended to use these funds for construction, Fairfax knew that that was Kris Jen's plan, and Fairfax expressly or impliedly approved use of those funds for construction. The complaint further alleges that in July 1988 counsel for Fairfax insisted that the option feature payments be held in escrow with Fairfax until settlement. Compliance with this request created a shortfall in Kris Jen's cash flow. We shall call this group of allegations the "options escrow" allegations. The options escrow allegations are the core of Counts VI and VII of the complaint, respectively alleging fraud and negligent misrepresentation as to both Plaintiffs, but options escrow allegations also appear throughout the complaint.

The complaint avers that Fairfax repeatedly delayed the payment of requisitions for construction loan draws and that

---

1. Docket entries from the mortgage foreclosure action also reflect that a motion for a deficiency judgment was filed on January 24, 1991, and that an order of court was filed on November 25, 1991, but the terms of that order do not appear in the record in the subject action. No party to the subject action treats the claim for deficiency as one that is being pursued actively in the foreclosure case.

Fairfax improperly reduced the requisitions submitted. This is said to have caused Kris Jen's initial construction manager/carpenter to terminate its contract and to have caused the successor carpentry subcontractor to request security for Kris Jen's unpaid obligations, all of which delayed progress of the work. We shall call this group of allegations the "default inducing" allegations. They are the core of Count V of the complaint, claiming tortious interference with the contracts between Kris Jen and its purchasers, but default inducing allegations also appear in Counts I, II, and III, which are more particularly described, *infra*.

Plaintiffs further allege that, in December 1988, Fairfax agreed to modify the loan agreement. A principal feature of the modification extended the date for completion of construction and for maturity of the loan to July 1989. During the extension Fairfax was to receive all net proceeds from the sales of townhouses, "pay all outstanding invoices of subcontractors and materialmen so as to bring them current," and "pay all future invoices received from subcontractors, materialmen and others directly and without hold-back." It is averred that when the construction loan account was exhausted, Fairfax was to extend additional credit to Kris Jen, presumably until completion of the project. We shall call this group of allegations the "workout agreement" allegations. They are the core of Count VIII of the complaint, in which Plaintiffs allege breach of the workout agreement with them. Workout agreement allegations are also integral to the first four counts. Count I avers breach of a duty to Kris Jen imposed by law on Fairfax and labels that duty "fiduciary." Count II avers breach of a duty to Seisman imposed by law and labels it a duty of good faith and fair dealing. Count III avers breach of a duty to Plaintiffs implied in the workout agreement that required Fairfax to act in good faith. Count IV avers negligent performance by Fairfax of the workout agreement, to Plaintiffs' damage.

The remaining group of allegations deals with Fairfax's conduct after entering into the alleged workout agreement. Plaintiffs aver that Fairfax, after having promised directly to

pay subcontractors and suppliers, not only failed to do so but denied to those persons that Fairfax had undertaken to do so. We shall call this group of allegations the "agreement denial" allegations. Inasmuch as Seisman had told subcontractors and suppliers that Fairfax would pay them directly, Count IX of the complaint undertakes to use the agreement denial allegations to state a claim sounding in defamation on behalf of Seisman. The agreement denial allegations also appear in Counts I through IV.[2]

The motion filed by Fairfax to dismiss the second amended complaint raised a number of defenses in addition to claim and issue preclusion. Fairfax also attached to its supporting memorandum documents and court papers that were not part of the complaint. In their response to the Fairfax motion, Plaintiffs attached additional documents and court papers that they had not incorporated into their complaint.

In a written opinion deciding the motion, the circuit court focused on the *res judicata* defense. The court identified five types of allegations that Plaintiffs were not permitted to aver in the complaint. The heart of the circuit court's rationale is set forth below.

"It is undisputed here that the foreclosure sale ... was ratified by the Court and that the auditor's report of that sale was ratified by the Court. It is our conclusion that at a minimum Kris Jen and Seisman are not permitted in this action to assert [1] that there was no default in the loan from Fairfax to Kris Jen. They are not permitted to assert in this action [2] that the default was induced or coerced by Fairfax or [3] that the foreclosure sale was illegal or fraudulent. Further, they are not permitted in this action to assert [4] that the price obtained at the foreclosure proceeding was inadequate. Further, they are not permitted to

---

**2.** The complaint also contains a Count X, seeking a judgment declaring that Kris Jen was not in default and that the foreclosure was without basis. The Court of Special Appeals held that that count was barred by *res judicata,* and Plaintiffs did not cross petition for review of that holding.

assert [5] that Kris Jen and Seisman suffered damages as a result of the loss of the property by way of the foreclosure.

"We conclude that the fact that there was a default, that Fairfax was entitled to act on the default, that the foreclosure sale was an appropriate response to the default, that the price obtained was appropriate under the circumstances of the sale, and that Kris Jen and Seisman have lost any right to redeem the property as a result of the foreclosure have all been adjudicated as a result of the ratification of the foreclosure sale and the ratification of the auditor's report. Those determinations cannot now be attacked by the plaintiffs in this proceeding."

The circuit court gave Plaintiffs leave further to amend their complaint and, thus, the opportunity to state a legally cognizable claim without relying on the matters that were precluded by judgment in the foreclosure action.[3] Plaintiffs advised the court that they would not amend, and the court entered judgment in favor of Fairfax.

## I

■ Maryland Rule 2–322(c) in part provides:

"If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2–501, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 2–501."

Here Plaintiffs' complaint alleged the advertising and sale at foreclosure of the deed of trust property, but the complaint does not aver what transpired thereafter. Exhibits to the parties' legal memoranda presented the exceptions to ratification of sale filed by the Plaintiffs, the withdrawal of those

---

3. The circuit court did not imply, nor do we, whether the complaint, with the inclusion of the precluded matter, stated claims on which relief could be granted.

objections, the opposition of Fairfax to that withdrawal, and, more important, the ratification of the sale and the ratification of the auditor's report. Thus, although the order of the circuit court ruling on Fairfax's motion gives leave to Plaintiffs to amend, the legal effect of the ruling was to grant a partial summary judgment.

In the two paragraphs quoted above that are the heart of the circuit court's opinion, the court first presents its preclusion ruling negatively, stating the facts that Plaintiffs will not be permitted to aver or prove. The second paragraph states the consequence of the preclusion ruling affirmatively. In so doing the circuit court in effect applied Md.Rule 2–501(f), which reads:

"When a ruling upon a motion for summary judgment does not dispose of the entire action ... the court, on the basis of the pleadings ..., may enter an order specifying the issues or facts that are not in genuine dispute. The order controls the subsequent course of the action but may be modified by the court to prevent manifest injustice."

Here the issues or facts that the circuit court determined were not in dispute, by virtue of its preclusion ruling, were that (1) there was a default, (2) on which Fairfax was entitled to act, and (3) did so appropriately by foreclosure sale, (4) at an appropriate price, with the result (5) that Plaintiffs lost any right to redeem the property.

Given the choice either of pleading around facts that they would not be permitted to contradict or of suffering judgment and appealing, Plaintiffs chose the latter.

## II

On their appeal to the Court of Special Appeals, and in this Court, Plaintiffs submit that *Rowland v. Harrison*, 320 Md. 223, 577 A.2d 51 (1990), controls the decision. In *Rowland* this Court adopted the position taken by Restatement (Second) of Judgments § 22 (1982). 320 Md. at 235, 577 A.2d at 57. Section 22 reads:

"(1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).

"(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:

"(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or

"(b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action."

*Rowland* involved an action in the District Court of Maryland by a veterinarian against a horse owner to collect for services rendered in boarding and treating the owner's horse. The owner, by a prayer for jury trial, removed the contract claim to the circuit court where the owner counterclaimed, asserting malpractice in the care and treatment of the horse. When the claim and counterclaim came on for trial, the owner was not prepared to try the malpractice case, and the court would neither postpone the case nor sever the counterclaim. Before the owner put on any evidence the court permitted the owner voluntarily to dismiss the counterclaim without prejudice. The veterinarian then obtained judgment on the contract claim. In a later, separate malpractice action by the owner, the circuit court granted summary judgment, based on *res judicata,* to the veterinarian. In *Rowland* this Court reversed, holding that a judgment for the owner in the malpractice action "would [not] nullify the initial judgment[, n]or would [it] impair rights established in the initial action." Restatement § 22(2)(b).

Plaintiffs correctly point out that Md.Rule 2–331(a) is a permissive counterclaim rule,[4] and that Maryland has no com-

---

4. Rule 2–331(a) reads as follows:

pulsory counterclaim rule comparable to Fed.R.Civ.P. Rule 13(a).[5] In the Court of Special Appeals Plaintiffs conceded "that there was a default under the *original* loan documents at issue in the foreclosure action, and that based on the terms of these loan documents, forfeiture was proper." Brief of Appellant at 28 (emphasis added). Similarly in the Court of Special Appeals, Plaintiffs did "not challenge the purchase price obtained for the [deed of trust] property, or the propriety of the procedures employed to sell this property." *Id.* Thus, Plaintiffs say that they do not seek to "nullify" the foreclosure judgment, with the result that the subject action may be maintained.

The Court of Special Appeals viewed Plaintiffs' argument largely from the standpoint of its impact on that court's decision in *Klein v. Whitehead*, 40 Md.App. 1, 389 A.2d 374 (1978). There, after a foreclosure had gone to judgment, the trustee in bankruptcy of a borrower sued the lender alleging that the lender had defrauded the borrower and violated fiduciary duties, on the theory that lender and borrower were partners. The principal reason given by the Court of Special Appeals for holding that the suit was barred was that it was a collateral attack on the foreclosure judgment. Under this "collateral attack" rule, as then applied by the Court of Special Appeals,

---

"(a) **Counterclaim Against Opposing Party.**—A party may assert as a counterclaim any claim that party has against any opposing party, whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim. A counterclaim may or may not diminish or defeat the recovery sought by the opposing party. It may claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party."

5. Fed.R.Civ.P. 13(a) in relevant part reads:

"A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

"a party against whom judgment has been recovered [cannot] sustain an action against his adversary ... for damages occasioned by ... procuring a judgment by fraud, as long as the judgment remains in force unreversed, because the charges made in the second action are conclusively negatived by the former adjudication."

*Id.* at 22, 389 A.2d at 386 (attribution and interior quotation marks omitted).

In its *Kris Jen* opinion, the Court of Special Appeals concluded that the above-quoted prohibition had been limited by *Rowland. Kris Jen,* 100 Md.App. at 36, 639 A.2d at 211. The court quoted the "relevant part" of comment f to § 22 reading as follows:

" 'Normally, in the absence of a compulsory counterclaim statute or rule of court, the defendant has a choice as to whether or not he will pursue his counterclaim in the action brought against him by the plaintiff. There are occasions, however, when allowance of a subsequent action would so plainly operate to undermine the initial judgment that the principle of finality requires preclusion of such an action. This need is recognized in Subsection (2)(b).

"For such an occasion to arise, it is not sufficient that the counterclaim grow out of the same transaction or occurrence as the plaintiff's claim, nor is it sufficient that the facts constituting a defense also form the basis of the counterclaim. *The counterclaim must be such that its successful prosecution in a subsequent action would nullify the judgment, for example, by allowing the defendant to enjoin enforcement of the judgment, or to recover on a restitution theory the amount paid pursuant to the judgment ..., or by depriving the plaintiff in the first action of property rights vested in him under the first judgment....*' (Emphasis added)."

100 Md.App. at 35–36, 639 A.2d at 211. Then, applying the "nullify" the judgment test, the Court of Special Appeals concluded, with respect to the Plaintiffs' complaint, the following:

"[Plaintiffs] are not seeking to overturn the foreclosure or to escape from its effect, nor are they making any claim to the property itself. Any recovery sought for an alleged unreasonableness in the sale price or for damages accruing from the loss of the property occasioned by the foreclosure would be barred ... for that *would* undermine the existing judgment, but compensatory damages for breach of duty, negligence, fraud, misrepresentation, or defamation (or, to the extent they otherwise may be allowed, punitive damages for those alleged transgressions) would not have that effect, and so are not barred by *res judicata.*"

*Id.* at 41, 639 A.2d at 213.

The holding by the Court of Special Appeals that recovery was precluded for unreasonableness in the foreclosure sale price is identical with one of the conclusions of the circuit court. The Court of Special Appeals also held that recovery was barred "for damages accruing from the loss of the property occasioned by the foreclosure." *Id.* This holding is broader than the comparable, affirmative holding by the circuit court (foreclosure decree adjudicated Kris Jen's loss of right to redeem), but this holding by the intermediate appellate court is consistent with the negative holding by the circuit court (Plaintiffs precluded from asserting that they "suffered damages as a result of the loss of the property by way of the foreclosure."). Plaintiffs have not sought certiorari review of these holdings by the Court of Special Appeals.

Thus, the only issue before this Court is whether the circuit court erred in holding that, as a result of claim or issue preclusion, Plaintiffs may not controvert that there was a loan default on which Fairfax acted appropriately by foreclosure sale.

Phrased another way, the circuit court did not hold that Plaintiffs were barred from seeking damages for "breach of duty, negligence, fraud, misrepresentation, or defamation...." *Id.* The circuit court merely held that in seeking damages for those alleged wrongs, Plaintiffs could not aver or prove that there was no default justifying foreclosure.

## III

Despite the relatively narrow holding by the circuit court, the Court of Special Appeals and the parties in their arguments to us have devoted principal attention to whether all of the claims in Plaintiffs' complaint are barred under the rule in § 22. In addition, Plaintiffs note that "the foreclosure case initiated by Fairfax is an *ex parte*, *in rem* proceeding." Brief of Appellee at 12. This raises the threshold question of whether the preclusion issue in the instant matter is correctly analyzed under the law relating to *in rem* judgments, including those rendered in *quasi in rem* proceedings, or under the law relating to *in personam* judgments.

The foreclosure sale in the matter before us was conducted pursuant to a power of sale in the deed of trust under the summary procedure authorized by Md.Code (1974, 1988 Repl. Vol.), § 7–105(a) of the Real Property Article.[6] The conditions precedent to commencing an action to foreclose a mortgage are that "(1) [t]he mortgage has been filed to be recorded, and (2) [t]here has been a default in a condition upon which the mortgage provides that a sale may be made." Md.Rule W72.a. In these summary proceedings "it shall not be necessary . . . that process issue or be served upon the opposite party, or that the opposite party file an answer, or that a hearing be held." Rule W72.e. Prior to sale of the mortgaged property, the person authorized to make the sale gives notice by publication in a newspaper and by certified mail to certain persons, including the mortgagor. Rule W74.a.2(b) and (c).

---

6. The docket entries from the foreclosure action reflect that it was commenced by an "Order to Docket Foreclosure, etc.," accompanied by a statement of debt and a non-military service affidavit. We presume that "etc." refers to the original or a certified copy of the deed of trust executed by Kris Jen. Further, the caption of the foreclosure action is the named substituted trustees versus Kris Jen. Fairfax's initial filings are those required for foreclosure of a deed of trust pursuant to a power of sale, see Md.Rule W72.c.1 and d, and the caption is that recommended for foreclosure of a deed of trust pursuant to a power of sale, see A. Gordon, IV, *Gordon on Maryland Foreclosures* § 5.04 (3d ed. 1994).

Following the sale at foreclosure, the person making the sale reports it to the court. Rules W74.e and BR6.a. Notice by publication is then given "stating that the sale will be ratified thirty days from the date of the notice unless cause to the contrary be shown." Rule BR6.b.2. If "exceptions are not filed to the report of sale, or if exceptions are filed but overruled," a final order of ratification of the sale is passed by the court. Rule BR6.b.4.

Upon final ratification of a report of sale in a mortgage foreclosure, it is mandatory that "the papers in the proceeding ... be referred to [an] auditor to state an account," directing the distribution of the proceeds of sale. Rules BR6.b.5 and W74.e. A party or claimant may file exceptions to an auditor's account or report and obtain a decision by the court. Rule 2–543(g) and (h).

> "If, after a sale of the whole mortgaged property, the net proceeds of sale ... are insufficient to pay the mortgage debt and accrued interest, as found by the court upon the report of the auditor, a motion for a deficiency decree may be made."

Rule W75.b.1. Notice that a deficiency judgment is sought is to be given "by summons or otherwise, as the court may direct." Rule W75.b.4. A deficiency judgment is an *in personam* judgment. *Id.*

Restatement (Second) Chapter 3 deals with "Former Adjudication: The Effects of a Judicial Judgment." Chapter 3 is divided into topics. Topic two deals with "Personal Judgments" while topic three deals with "Judgments Based on Jurisdiction over Things or over Status." Section 22 is part of the "Personal Judgments" topic. Restatement (Second) § 30 comment a treats a judgment in an action to foreclose a mortgage as a judgment based on jurisdiction to determine interests in "things."

 Thus, it is possible for a mortgage foreclosure proceeding in Maryland in which no deficiency decree is sought to be purely *in rem*. It is also possible, if the mortgagor voluntarily appears, for the proceeding to include judgments

in the form of rulings on exceptions to the sale and to the auditor's report, respectively, that have *in personam* collateral estoppel effect.

■ In the instant matter, Kris Jen personally appeared in the foreclosure action and filed exceptions to the report of sale. Those exceptions, however, were never adjudicated, so that we are not concerned in this case with collateral estoppel or issue preclusion against the Plaintiffs, but with *res judicata.* Consequently, any preclusive effect that the order of ratification in this matter may have, greater than the preclusive effect that a foreclosure judgment would have if entered without any exceptions having been filed, is necessarily dependent on Plaintiffs' voluntary appearance in the foreclosure proceeding.

In Part IV, *infra,* we consider whether the foreclosure decree in the instant matter, viewed as an *in rem* judgment exclusively, precludes litigation of the mortgage default issue.

Plaintiffs injected the *in rem* nature of Maryland mortgage foreclosure into this case by arguing that an alternative reason why their complaint is not precluded is because their claims procedurally could not have been asserted in the mortgage foreclosure proceeding. We consider and reject that argument in Part V, *infra.*

Finally, because we hold in Part V that Kris Jen had the opportunity to assert the no default defense in the mortgage foreclosure action, the *res judicata* effect of the ratification of the sale on the Plaintiffs' claims should be analyzed under the rules in § 22. We present that analysis in Parts VI and VII.

### IV

■ *Bainder v. Sound Bldg. & Loan Ass'n,* 161 Md. 597, 158 A. 2 (1932), illustrates the *in rem* effect of foreclosure sale ratification under facts that are somewhat analogous to those in the instant matter. Bainder and his co-mortgagor, Levey, after having executed a mortgage in June 1923, conveyed the mortgaged property in August of that year. Thereafter, the

new owner paid the mortgage. In 1926 Levey died, and the mortgagee made no claim against Levey's estate. In 1931 the lender foreclosed, no exceptions were taken to the report of sale, and the sale was ratified. Bainder thereafter unsuccessfully excepted to the auditor's report, and he appealed from its ratification. This Court assumed that Bainder's exceptions and his proffer of proof were directed to showing that the mortgagee had released the mortgage debt against Levey's estate, and, further, that the legal effect of that release was to discharge Bainder from further liability on the mortgage.

On those assumptions, this Court nevertheless held as follows:

"[I]n such a proceeding as this, which is against the mortgaged property alone, such an objection could only be made by the mortgagors . . . in a direct attack on the right of the mortgagee to foreclose the mortgage, and not collaterally in a proceeding relating exclusively to the distribution of the proceeds of a foreclosure sale, since the right of the mortgagee to subject the mortgaged property to the payment of the mortgage debt was conclusively fixed by the final ratification of the mortgage sale (*Albert v. Hamilton,* 76 Md. 304, 25 A. 341 [ (1892) ] ), for there can be no real doubt that, if Bainder as mortgagor personally was liable for any deficiency, he would have been interested in having the property sold for enough to discharge his liability, and he would have been entitled to protect that interest by objecting to the ratification of a sale unfairly or improperly made. . . . And since he could have excepted to the ratification of the foreclosure sale, but failed to do so, he is bound by it as completely as if he had objected to it. *The effect of that decree was to establish the mortgage debt as a valid and subsisting debt enforceable against the mortgaged property, but not to establish the personal liability of Bainder for the payment of that debt.* That question cannot arise unless and until the mortgagee, by a petition or motion for a decree *in personam* or other appropriate proceeding attempts to establish that liability, and while the fact, if it is a fact, that the mortgagee discharged Bainder from any per-

sonal liability for the debt would be relevant in such a proceeding, it is not relevant in a proceeding to distribute the proceeds of a sale of the mortgaged property after the sale has been finally ratified. For the mortgage debt and the personal liability of the mortgagors for the payment of that debt are different things ... not relevant except in a proceeding to enforce that liability."

*Id.* at 603–04, 158 A. at 5 (emphasis added; citations omitted).[7]

*Bainder* would be more analogous to the instant matter if Bainder had contended that the exculpation of the mortgagors from personal liability was part of a release of the property from the lien of the mortgage. That would have presented a direct conflict between ratification of the sale, with its implicit determination that the property was subject to the mortgage, and a defense, raised against a deficiency but not asserted by exceptions to the report of sale, that the mortgage debt and

---

7. *Albert v. Hamilton,* 76 Md. 304, 25 A. 341 (1892), cited in *Bainder,* presents a different problem from that presented in *Bainder.* In *Albert* there were multiple mortgagors, some of whom excepted to ratification of the foreclosure sale, but the exceptions did not include fraud in procuring the mortgage. After ratification of the sale other of the mortgagors brought an action to set aside the foreclosure sale, not on the ground of fraud in procuring the judgment of ratification, but on the ground of fraud in obtaining the mortgage.

 This Court held that
 "the ratification of the sale determined that the mortgage was valid and that the parties to the proceedings are precluded from further litigation of the question. We see no reason why the statute law should not have full effect, when it declares that the confirmation of the sale by the court shall pass all the title which the mortgagors had in the mortgaged premises at the time the mortgage was recorded."
 *Id.* at 309–10, 25 A. at 343.

 If the two above-quoted sentences are read to express the same concept, *Albert* stands for the unremarkable proposition that ratification of the sale conveys to the purchaser all of the title that the mortgagors had at the time of making the mortgage. If the first sentence of the two above-quoted sentences is read as expressing an independent concept of preclusion embodied in the ratification judgment, *Albert* may illustrate that aspect of the rule in § 22 that bars relitigation that would "nullify" the prior judgment.

 In the case before us Plaintiffs do not seek to set aside the ratification of the foreclosure sale, nor do they claim any title to the foreclosed property.

lien were released. Nevertheless, under the rule adopted by the original Restatement of Judgments concerning judgments *in rem,* the defense to the deficiency claim in our hypothetical would not be precluded.

Restatement of Judgments § 73 (1942), "Proceedings with Respect to Property," states the following:

"(1) In a proceeding in rem with respect to a thing the judgment is conclusive upon all persons as to interests in the thing.

"(2) A judgment in such a proceeding will not bind anyone personally unless the court has jurisdiction over him, and it is not conclusive as to a fact upon which the judgment is based except between persons who have actually litigated the question of the existence of the fact."

The comparable section in Restatement (Second), § 30, does not expressly declare that, absent collateral estoppel, an *in rem* judgment has no preclusive effect as to a fact upon which the judgment was based, but § 30 does not appear to differ in substance from § 73 of the original Restatement in that respect.[8]

Consequently, it appears that under the rules recognized in the Restatements, and viewing the judgment solely as *in rem,* the Plaintiffs could relitigate, in the context of their present claims for damages, whether the deed of trust by Kris Jen was in default when Fairfax foreclosed, even though the existence

---

8. Restatement (Second) of Judgments § 30 reads:
 "Judgments Based on Jurisdiction to Determine Interests in Things
 "A valid and final judgment in an action based only on jurisdiction to determine interests in a thing:
 "(1) Is conclusive as to those interests with regard to all persons, if the judgment purports to have that effect (traditionally described as 'in rem'), or with regard to the named parties, if the judgment purports to have that effect (traditionally described as 'quasi in rem'); and
 "(2) Does not bind anyone with respect to a personal liability; and
 "(3) Is conclusive between parties, in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action."

of a default is a condition precedent to commencing a mortgage foreclosure in Maryland.

V

██ Plaintiffs' argument that is based on the *in rem* aspects of mortgage foreclosure in Maryland follows a different path from that set forth in Part IV, *supra.* Plaintiffs argue:

"[P]ursuant to Maryland law, there is no remedy within the actual foreclosure action for Kris Jen to file a compensable claim for any wrongdoing or breach on the part of Fairfax. Further, this expedited proceeding in equity affords the defending party no right to a jury trial. In short, procedurally, a foreclosure action does not provide an appropriate forum for Kris Jen's remedies at law. Fairfax's assertion that Kris Jen proceed with this counterclaim in this limited forum, directly contravenes the rationale behind Maryland's permissive counterclaim rule which allows the defendant to choose the time and place to bring a claim."

Brief of Appellee at 12–13.

██ We do not agree with this reasoning. Prior to 1984, when the "distinctions between law and equity for purposes of pleadings, parties, court sittings, and dockets" were eliminated, Md.Rule 2–301, committee note, foreclosure of a deed of trust pursuant to a power of sale contained therein was an exclusively equitable remedy. Indeed, the statutorily created, summary procedure is an alternative to an *in personam* action under the extant, but rare, bill in equity for strict foreclosure. *Saunders v. Stradley,* 25 Md.App. 85, 91–93, 333 A.2d 604, 608–09 (1975). Today, however, nothing in the Maryland Rules of Procedure prohibits a mortgagor who voluntarily appears in a mortgage foreclosure proceeding from filing a counterclaim. *Higgins v. Barnes,* 310 Md. 532, 530 A.2d 724 (1987), explains how the right to a jury trial is preserved when the complaint asserts claims previously cognizable only in equity, and the counterclaim asserts claims previously cognizable only at law, and on which a jury trial is prayed.

The current posture of Maryland practice is aptly described in Restatement (Second) § 25 comment i, where the American Law Institute states:

"When 'law' and 'equity' with their distinctive remedies were separately administered, a plaintiff had to choose between the two 'sides' when he brought his action, and the choice could be difficult, as the dividing line was not exact. Also, it was sometimes impossible to dispose completely in a single action of an entire transaction or controversy, since it might require a combination of legal and equitable remedies. The difficult remedial situation created by the law-equity division naturally had important restrictive effects on the operation of the doctrines of merger and bar. These are overcome when law and equity are 'merged' or unified into the 'one form of action' so that a pleader may and is expected to demand in a single action any and all remedies suited to the case."

We hold that Plaintiffs could have asserted as a counterclaim in the mortgage foreclosure proceeding the same claims which are presented in their second amended complaint. Thus the alternative reason submitted by the Plaintiffs for holding against preclusion does not apply.[9]

## VI

Although the case before us does not involve a counterclaim filed in the mortgage foreclosure action, this case does

---

**9.** Although there is no theoretical obstacle to docketing a counterclaim by the mortgagor in a mortgage foreclosure proceeding, there are innumerable practical difficulties. Obviously, the judicial sale cannot be consolidated with trial of the counterclaim. If the counterclaim is filed before sale, the court may be required to exercise its discretion as to which aspect of the single action on the docket is to proceed first. An informed judicial discretion on the timing issue would consider the provisions of Md.Rule W76.b, "Injunction to Stay Foreclosure," which is based on the legislative policy formerly codified in Md.Code (1957), Art. 66, §§ 16 and 17. If exceptions to the ratification of the sale are filed, a circuit court may also have to consider issues of severance under Md.Rule 2–503(b) as well as issues relating to the preservation of the right to a jury trial.

involve the defense of no default which could have been asserted and decided on exceptions to sale ratification in the mortgage foreclosure action in which Plaintiffs voluntarily appeared. This is the aspect of the case that generates the debate over the scope and application of § 22.

Plaintiffs' position is that the ordinary rule applies here. That rule is stated in comment b to § 22 as follows:

"In the absence of a statute or rule of court otherwise providing, the defendant's failure to allege certain facts either as a defense or as a counterclaim does not normally preclude him from relying on those facts in an action subsequently brought by him against the plaintiff. See Subsection (2)(b) and Comment f thereon for discussion of the exception to this rule. The failure to interpose a defense to the plaintiff's claim precludes the defendant from thereafter asserting the defense as a basis for attacking the judgment (see § 18). But the defendant's claim against the plaintiff is not normally merged in the judgment given in that action, and issue preclusion does not apply to issues not actually litigated (see § 27). The defendant, in short, is entitled to his day in court on his own claim."

Fairfax relies on the exception to the rule of § 22 found in § 22(2)(b) under which a second action is precluded if its "successful prosecution ... would nullify the initial judgment or would impair rights established in the initial action." Fairfax submits that the Court of Special Appeals gave too limited a reading to the concept of nullifying the initial judgment. Comment f presents as examples of the concept "allowing the defendant to enjoin enforcement of the judgment, or to recover on a restitution theory the amount paid pursuant to the judgment...." Fairfax submits that the Court of Special Appeals made these examples the limits on the operation of the "nullify the judgment" exception to the general rule.

The reporter's note to § 22 and the cases support Fairfax's position. The reporter's note advises that comment f, its illustrations, "and Subsection (2)(b) itself, represent an effort to articulate the bases in precedent and policy for what might

be termed a 'common-law compulsory counterclaim rule.' It is perhaps impossible to define the scope of this concept with precision. . . ." Restatement (Second) of Judgments at 193. "[R]ecovery of the amount paid pursuant to [the prior] judgment on a restitution theory," and significant impairment of the interest in certain property adjudicated in the prior action "appear to be at least two situations where the need for such a common-law rule is clear. . . ." *Id.* at 193–94.

Among the cases cited in the reporter's note as illustrating comment f to § 22 is *Martino v. McDonald's Sys., Inc.,* 598 F.2d 1079 (7th Cir.), *cert. denied,* 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379 (1979). A McDonald's franchise agreement prohibited Martino and his family from acquiring an interest in a competing food business without McDonald's consent. Martino's son purchased a Burger Chef, McDonald's sued, and a consent judgment was entered under which Martino sold the franchise, apparently to a McDonald's affiliate. Martino then sued McDonald's alleging that the restriction violated the Sherman Act. The court found that the federal compulsory counterclaim rule did not apply and held that the "common law compulsory counterclaim" rule in § 22(2)(b) barred the second action.

The second action directly challenged the prior judgment because the latter had concluded that termination of the franchise was justified. The court explained that for purposes of *res judicata* "a 'cause of action' comprises defenses . . . that were or might have been raised." 598 F.2d at 1084. It stated:

" '[A judgment on the merits] is a finality as to the claim or demand in controversy, concluding parties, and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered on a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as

forgery, want of consideration, or payment. If such defenses were not presented in the action, and established by competent evidence, *the subsequent allegation of their existence is of no consequence.*' "

*Id.* (quoting *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1876) (emphasis added)). The court would not "hold that the counterclaim exception to the res judicata rule, based merely on notions of convenience, permits the plaintiff here to wage this direct attack on the rights established by the prior judgment." 598 F.2d at 1085. In essence, the prior judgment was predicated on the validity of the restriction while the second action sought to have the restriction found to be illegal and unenforceable.

The Seventh Circuit also applied the exception stated in § 22(2)(b) to a franchise agreement in *Rudell v. Comprehensive Accounting Corp.,* 802 F.2d 926 (7th Cir.1986), *cert. denied,* 480 U.S. 907, 107 S.Ct. 1351, 94 L.Ed.2d 521 (1987). The franchisor had obtained a judgment confirming an arbitration award of damages against the franchisee for breach of the agreement. The franchisee had not appeared at the arbitration. It was held that this judgment of confirmation precluded a later action by the franchisee claiming that the agreement was procured by fraud.

Where the prior judgment is one foreclosing a mortgage and the later action is brought by the borrower against the lender and arises out of the same transaction, a number of cases have applied claim preclusion. *Henderson v. Snider Bros.,* 439 A.2d 481 (D.C.App.1981) (en banc), *rev'g,* 409 A.2d 1083 (1979) (three judge panel), undertakes to apply pre-*Rowland* Maryland law in determining the preclusive effect of a mortgage foreclosure. The Plaintiffs, together with an employee of their real estate broker, had purchased income producing property in Maryland financed by a mortgage back to the vendors. The Plaintiffs defaulted, and the property was foreclosed without objection to ratification of the sale. The action in the reported decision sounded in deceit for damages, alleging that the income produced by the property had been misrepresented and that the real estate broker had received

one of the notes given by the purchasers to the vendors. The court in part relied on *Klein*, 40 Md.App. 1, 389 A.2d 374, for applying a same evidence test under which the court concluded that the two actions were the same for *res judicata* purposes. *Henderson*, 439 A.2d at 485. The nexus was said to be that the misrepresentation as to income from, and thereby value of, the property purchased "necessarily involves an attack on the validity of the sales price and therefore goes to the validity of the promissory notes involved in the foreclosure." *Id.* The court then held that "the fraud issue could have and should have been raised in the foreclosure proceedings" and that questions "concerning misrepresentation as to the sales price, and the validity of the sale have been finally adjudicated, and cannot now be raised." *Id.*

As phrased, this reasoning would mean that Maryland mortgage foreclosure practice embodies the equivalent of a compulsory counterclaim. The Maryland cases cited by the District of Columbia court for that analysis, however, do not support it. Those cases are *Hohensee v. Minear*, 259 Md. 603, 270 A.2d 776 (1970) (per curiam), and *Bachrach v. Washington United Coop., Inc.*, 181 Md. 315, 29 A.2d 822 (1943).

In *Bachrach* the mortgagee's assignee bought in at the foreclosure sale which was finally ratified. Two months later the mortgagor sued and obtained a circuit court judgment rescinding the ratification and annulling the deed to the foreclosure sale purchaser. This Court held that the purchaser's alleged fraud—essentially the mortgagor's disappointed expectations that the purchaser would continue the mortgagor's eleemosynary works on the property—did not constitute fraud that would justify setting aside an enrolled judgment.

*Hohensee* is an appeal from the ratification of an auditor's report to which one of the mortgagor's exceptions was an unspecified "assault on the order ratifying the second sale of his property." 259 Md. at 607, 270 A.2d at 778. Citing *Bachrach*, this Court said that there was no fraud discovered after the sale and that the "present allegations of fraud were litigated at the time the second sale was ratified." *Id.* Nei-

ther *Hohensee* nor *Bachrach* deals with a later tort action based on the same allegedly fraudulent conduct.

The en banc opinion in *Henderson* by the District of Columbia Court of Appeals does not cite § 22. We interpret *Henderson* to turn on the policy determination that "[t]he interests of judicial economy and, more importantly, the necessity of certainty in the finality of judgments require that a defense of fraud not be withheld in a proceeding in which it would be germane, to be raised later as a separate and independent cause of action." 439 A.2d at 486–87.

Plaintiffs, with support from the Court of Special Appeals opinion in the present case, take the position that, even if *Henderson* correctly stated the Maryland law at the time it was decided, this Court's adoption of § 22 in *Rowland* changed that law.

That position is supported by *Carey v. Neal, Cortina & Assocs.*, 216 Ill.App.3d 51, 159 Ill.Dec. 551, 576 N.E.2d 220 (1991), which the Court of Special Appeals considered to be persuasive in the present case. *Carey* undertakes to apply § 22. There the mortgagors did not contest the foreclosure in Florida by their take-back mortgagee, but the mortgagors later sued in Illinois for damages based on alleged fraud in inducing their purchase of the property. The court held that the mortgagors were barred "from now seeking relief from the mortgage foreclosure judgment, including liability on the note." 159 Ill.Dec. at 556, 576 N.E.2d at 225. They could neither rescind the mortgage note nor claim the Florida real estate itself. *Id.* But, because "the elements and proof of fraudulent misrepresentation and the elements and proof of the mortgage documents and promissory note are clearly distinct," the court held that the mortgagors "should not be barred from seeking whatever tort damages they can prove." *Id.*

The *Carey* view of the operation of § 22 seems to limit the concept of "nullifying" the prior judgment in the mortgage foreclosure context to relief in the later action by way of

recovery of the realty or by abrogating the mortgage loan debt. Other cases applying § 22 are not so restrictive.

Prior to *Carey* the Seventh Circuit had decided, under Illinois law, *Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir.1986). The bank held first and second mortgages on the same commercial premises. The second mortgage secured a pre-existing debt of approximately $345,000. Both mortgages were foreclosed under the Illinois procedure which is a plenary, *in personam* action. See Illinois Ann.Stat., ch. 110, ¶¶ 15–108 through 15–114 (Smith–Hurd 1984). Although the mortgagors resisted on a number of grounds, they never claimed that the second mortgage was a forgery or that it was obtained by fraud. After the foreclosure and deficiency judgments had been affirmed on appeal, the mortgagors brought a RICO action against the bank and others claiming that the second mortgage was a forgery.

Applying § 22(2)(b) the court held that allowing the mortgagors "to raise their fraud claims to challenge the validity of the second mortgage and thereby establish a RICO violation would clearly undermine" the prior judgments. 808 F.2d at 1235. Two reasons underlay the court's conclusion. First, "if the [mortgagors] were to recover the damages they seek, the deficiency judgments awarded [the bank] would be rendered meaningless." *Id.* at 1236. This rationale views the relationship between a mortgage foreclosure deficiency judgment and the later action by the borrower as though it were a running account in which credits to the lender may subsequently be offset by debits for payments to the former borrower. That is an extremely broad interpretation of nullifying the prior judgment. The second reason given in *Henry*, described by the court as "[e]ven more troublesome" for the debtor's position, was that the later action sought to cancel the second mortgage note and the underlying debt and to enjoin collection of the debt. This would "impair the rights established in the state court mortgage foreclosure proceedings." *Id.*

*Carey* distinguished *Henry* on the ground that the second action involved in *Carey* rested on a misrepresentation theory,

while the second action in *Henry* rested on forgery. 159 Ill.Dec. at 558, 576 N.E.2d at 227. The *Carey* court said that if the *Henry* mortgagors "believed that one of the two liens the bank was foreclosing on had been forged or altered, the obvious place and time to raise the defense would have been at the original foreclosure proceeding." *Id.*

*A.B.C.G. Enters., Inc. v. First Bank Southeast, N.A.*, 184 Wis.2d 465, 515 N.W.2d 904 (1994), applies the § 22(2)(b) exception more broadly than did *Carey.* After the foreclosure the borrower sued the lender claiming that the lender had misrepresented the investment quality of the mortgaged properties at the time the borrowers had purchased them, that the lender breached the loan agreement regarding the schedule for payments and providing for an extension of additional credit to make repairs, and that the lender had failed properly to manage the property and to credit rentals. The Supreme Court of Wisconsin concluded that successful prosecution of those claims "would nullify the prior foreclosure action or impair rights established in the initial action." 515 N.W.2d at 910. The court viewed the misrepresentation allegations as a claim that the mortgage obligation was not valid. It viewed the breach of contract claims as allegations that, absent the bank's action, the borrower would not have been in default. The court viewed the claim concerning insufficient credits as an attempt again to put in issue the amount owed under the mortgage. A judgment in favor of the borrower in the second action "would thus directly undermine the original default judgment in which the court held that under the circumstances, foreclosure was proper." *Id.* at 910–11. Then, reinforcing with a running account-restitution kind of analysis, the court further observed that if the borrower recovered damages from the bank, the judgment awarding the bank "the amounts due on the properties and additional costs would be rendered meaningless," in that the bank "could be essentially forced to return its previous recovery." *Id.* at 911.

Preclusive effect under § 22(2)(b) was also given to a foreclosure judgment in *Del Turco v. Peoples Home Sav. Ass'n,*

329 Pa.Super. 258, 478 A.2d 456 (1984). In the second action in that case the debtor alleged that the default was caused by the failure of the lender to credit certain rents and the undrawn balance on a construction loan, by imposition of an unconscionable attorney's fee, and by the failure to permit sale, free of the mortgage, of one of two properties so that the net mortgage debt, after crediting the sales proceeds, would be a lien only against the remaining property. The Pennsylvania court considered the debtor's claims to present a restitutionary theory of recovery of the amounts paid under the foreclosure judgment. 478 A.2d at 463.

Nullification of the prior judgment, within the meaning of § 22(2)(b), was also found in *County Fuel Co. v. Equitable Bank Corp.*, 832 F.2d 290 (4th Cir.1987), in which the creditor enforced a security interest in the debtor's accounts receivable. A bankruptcy court had lifted the automatic stay to permit exercise by the creditor of its rights in the security, and the debtor had made certain judicial admissions with respect to the collection of the secured claim. The Fourth Circuit treated these as the initial judgment. When the debtor later sued the creditor, alleging breach of an extension agreement, the Fourth Circuit held that the claim was precluded, concluding that "[t]he practical effect of a successful prosecution of [the debtor's] claim would be to require [the creditor] to make restitution of the amount realized upon its claim." *Id.* at 293.

Our decision in *Rowland* would seem to be inconsistent with a very broad application of the § 22(2)(b) rule based solely on what we have called the running account analysis. In *Rowland,* the veterinarian's judgment for services rendered to the horse owner can be considered as a credit in the veterinarian's favor that would be cancelled or exceeded by a malpractice judgment payable by the veterinarian to the horse owner. That offset, in and of itself, did not preclude the owner's later action. In the instant case, however, there are additional factors which make a judgment for Plaintiffs one nullifying the foreclosure judgment.

## VII

We have seen in Parts I and II that this Court's review of the ruling by the circuit court in this case is limited to that court's preclusion of allegations that there was no foreclosure-triggering default. We have also seen in Parts III, IV and V that, from the standpoint of Maryland procedure and based on Kris Jen's voluntary appearance, Kris Jen had the opportunity to litigate to judgment in the foreclosure action its defense that there was no foreclosure-triggering default. Thus, under *Rowland* the claim preclusion effect of the foreclosure decree in this case is determined under the rule in § 22. But the courts are not in agreement on the application, scope and rationale underlying that rule. Indeed, there probably is no single, relatively concrete or bright-line test for identifying cases subject to the exception in § 22(2)(b) and those subject to the general rule in § 22(1) of no preclusion. The weight to be given to the policy of repose may vary between types of actions and based on the facts.

In any event, in the instant matter, a foreclosure-triggering default is a condition precedent to a Maryland mortgage foreclosure. Rule W72.a. Ordinarily the existence of that essential will be demonstrated by the statement of mortgage debt and by the mortgage that are required to accompany the order to docket the summary proceeding. Rule W72.c.1 and d. Allegations that there was no foreclosure-triggering default negate, contradict, and in that sense nullify an essential foundation for the foreclosure judgment. Those allegations were precluded by the foreclosure judgment, and the circuit court correctly ruled that they should be culled from Plaintiffs' second amended complaint.

We emphasized that the above holding is not intended to express the full range of the § 22(2)(b) exception to the general rule of non-preclusion. It is sufficient simply to note that the above holding is distinguishable in at least one substantial respect from *Rowland*. A veterinarian suing on an implied contract to pay the reasonable value of services rendered under an expectation of payment need not allege and

prove that there was no malpractice. The burden is on the plaintiff in the malpractice action to prove negligence. *See Kennelly v. Burgess*, 337 Md. 562, 654 A.2d 1335 (1995).

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT AFFIRMING THE JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.*

CHASANOW, J., concurs in Parts I, II, III, V, and VII of the above opinion and in the mandate of the Court, but not in Parts IV and VI.